**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| MARVELLE J. "JAY" BALLENTINE<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., ACCENTURE LLP; TASKUS, INC, and GENPACT USA, INC.,<br><br>Defendants. | Case No 6:26-cv-376 |

**DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

This case arises out of Meta Platforms, Inc.'s ("Meta") policy against "Child Sexual Exploitation" ("CSE"), whereby Meta prohibits content that exploits or endangers children. Pro se Plaintiff Marvelle J. "Jay" Ballentine brings this suit against Accenture, TaskUs, Inc., and Genpact USA, Inc. (together, the "Vendor Defendants") and Meta. He alleges that Meta disabled his Facebook account for violating Meta's CSE policy, and an unnamed Vendor Defendant affirmed the disablement. Based solely on his allegations that a Vendor Defendant was aware that Plaintiff was Black when it upheld the disablement and that, in a handful of other CSE enforcement cases (out of millions), Meta allegedly reversed the initial determinations for white users, Plaintiff summarily accuses Meta of disabling his account based on his race and asserts claims under several federal civil rights statutes.

Plaintiff originally brought his claims against Accenture and Meta in the Northern District of California. But he dismissed that action and refiled his claims here after the Northern District of California court took the defendants' motions to dismiss under submission and declined to permit Plaintiff to seek discovery while those motions were pending.

Plaintiff's present claims against Meta fail at the outset because this Court, unlike the court where Plaintiff first filed his claims, does not have personal jurisdiction over Meta. As Plaintiff acknowledges, Meta is a Delaware

corporation with its principal place of business in California. As such, there is no general jurisdiction over Meta. And Plaintiff does not allege that Meta engaged in any suit-related conduct in or directed to Florida, so this Court also lacks specific jurisdiction over Meta.

Plaintiff's claims against Meta are also barred by Section 230(c)(1) of the Communications Decency Act ("Section 230"), which bars claims against interactive computer service providers based on the removal of content, including user accounts, from their services.

Plaintiff's claims against Meta are also insufficiently pled under Rule 12(b)(6), for multiple, independent reasons, including because Plaintiff fails to plead any facts showing that Meta engaged in intentional racial discrimination. Accordingly, even if the Court had jurisdiction, Plaintiff's claims must be dismissed without leave to amend.

## II. BACKGROUND

**Meta's Terms and CSE Policy:** Meta operates Facebook, a service that enables users to create accounts to connect, share, discover, and communicate with friends, family, and communities on mobile devices and personal computers. All users of Facebook must agree to Meta's Terms of Service, which in turn require users to follow Meta's Community Standards. The Community Standards outline what is and is not allowed on Meta services, including Facebook, and the Community Standards incorporate the CSE policy. Meta's

CSE policy generally prohibits "content or activity that sexually exploits or endangers children" on Meta's services.[1] Decl. of Michael Duffey, Ex. A. As stated in Meta's policy, "[w]hen [Meta] becomes aware of apparent child exploitation"—a subset of the content and activity prohibited by Meta's policy—Meta "report[s] it to the National Center for Missing and Exploited Children ("NCMEC"), in compliance with applicable law." *Id.* As also explained in Meta's CSE policy, Meta prohibits and removes content beyond its statutory reporting requirements to NCMEC. For example, Meta may remove content under its CSE policy when "people share nude images of their own children with good intentions." *Id.*

**<u>Plaintiff's Allegations</u>:** Plaintiff alleges that he is a "Black business owner" who "operated [a] mobile RV repair business." Dkt. No. 19, First Amended Complaint ("FAC") ¶ 28. According to Plaintiff, in June 2022 he began using Facebook for advertising purposes for his RV repair business. *Id.* ¶ 53. Plaintiff contends that he first posted advertisements for his business between June 27-30, 2022. *Id.*

---

[1] Meta's CSE policy is incorporated by reference in the FAC and is, therefore, properly considered here. *See* FAC ¶¶ 127-128 (alleging that Plaintiff's Facebook account is "governed by Meta's terms and commercial service agreements" and that "Plaintiff's access to his" Facebook account was disabled based on Meta's "invocation of its [CSE] policy"); *see also Watson v. Kingdom of Saudi Arabia*, 159 F.4th 1234, 1267 n.4 (11th Cir. 2025) ("[U]nder the incorporation-by-reference doctrine, a court may properly consider a document when resolving a motion to dismiss "if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged.") (quoting *Johnson v. City of Atlanta*, 107 F.4th 1292 (11th Cir. 2024)).

Several days later, on July 4, 2022, Meta allegedly disabled his Facebook account, "invok[ing] its CSE policy." FAC ¶ 54. Plaintiff alleges that he appealed his disablement for the CSE violation, but a human reviewer from one of the Vendor Defendants affirmed the ban after they received a copy of Plaintiff's U.S. passport, which included his photo. *Id.* ¶¶ 55-56.

Plaintiff also alleges that in 2022, "Meta actioned approximately ***105.9 million items*** under its [CSE] enforcement category[,]" including 92.2 million items on Facebook alone. FAC ¶ 34 (emphasis added). Plaintiff also alleges that out of 105.9 million actions, 8,100 were reversed on appeal through review, and five of those reversals involved white users. *Id.* ¶¶ 67, 69-73. Based on these allegations, Plaintiff asserts that Meta disabled his account "because of Plaintiff's race," FAC ¶ 134, and brings claims under 42 U.S.C. § 1981, 42 U.S.C. § 1982, 42 U.S.C. § 1983, and 42 U.S.C. § 1985(3). FAC ¶¶ 125-177.

**Procedural History:** The claims and allegations in Plaintiff's First Amended Complaint ("FAC") were first alleged in the complaint that he filed against Meta and Accenture in the United States District Court for the Northern District of California, captioned *Ballentine v. Meta Platforms, Inc. et al*, No. 3:25-cv-7671 (the "California Action"). As Plaintiff conceded in his original Complaint in this action, Meta and Accenture moved to dismiss his claims and Plaintiff brought five different motions, including to advance the 26(f) conference so that he could pursue early discovery, which were all denied.

*See* Dkt. No. 1, Complaint ("Compl.") ¶¶ 9-10. Apparently frustrated with the Northern District of California's rulings on his motions and the direction of the litigation, (Compl. ¶¶ 9-12), Plaintiff decided to—in blatant contravention of the forum selection clause in the Terms—dismiss the California Action and refile in this Court on February 17, 2025. Compl. ¶12.[2]

## III. THE FAC SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER META

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Kinney v. Mindsize, LLC*, 2021 WL 3911859, at *2 (S.D. Fla. June 7, 2021). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). "[V]ague and conclusory allegations. . . are insufficient to establish a prima facie case of personal jurisdiction[.]" *Snow v. DirectTV, Inc.*, 450 F. 3d 1314, 1318 (11th Cir. 2006).

The FAC does not contain *any* jurisdictional allegation specific to Meta, alleging only that Plaintiff "accessed [Meta's] platforms and services from

[2] Meta is concurrently filing a Motion to Transfer back to the Northern District of California pursuant to the mandatory forum section clause in the Terms, and explicitly reserves all rights to re-raise, on a renewed motion to dismiss, the applicable statute of limitations defenses that bar Plaintiff's federal civil rights claim if they had been brought in the proper forum.

Florida, and suffered the injuries alleged herein in Florida." FAC ¶ 15. This is plainly insufficient to show either general or specific jurisdiction over Meta.

**1. Meta is not subject to general personal jurisdiction in Florida.**

A court may assert general jurisdiction over nonresident defendants only when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 317(1945)); *see* Fla. Stat. § 48.193(2). Absent exceptional circumstances, a corporate defendant is only "at home" in a forum where it is either incorporated or has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Meta is undisputedly not "at home" in Florida. The FAC concedes that Meta is a Delaware corporation with its principal place of business in California. *See* FAC ¶ 20. And courts have consistently held that allegations that Meta transacts business in a state do not suffice to show that Meta is "at home" in the state for purposes of establishing general jurisdiction. *See, e.g., Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1136 (M.D. Fla. 2021) (finding no general jurisdiction over Facebook in Florida).

**2. Meta is not subject to specific personal jurisdiction in Florida.**

To establish specific jurisdiction over a nonresident defendant like Meta,

Plaintiff must show that his claims "arise out of or relate to a defendant's contacts with Florida." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015); *see* Fla. Stat. § 48.193(1). The key inquiry is whether the defendant's "conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This turns on "whether *the defendant's* actions connect [it] to the *forum*." *Walden v. Fiore*, 571 U.S. 277, 288-89 (2014).

Here, Plaintiff fails to allege any conduct by Meta in Florida whatsoever—let alone conduct related to Plaintiff's claims—that would give rise to specific jurisdiction. Plaintiff's only jurisdictional allegation as to Meta is that Meta's services are accessible in Florida. *See* FAC ¶ 16. But courts routinely reject similar allegations regarding the availability of Meta's services in the forum as insufficient to establish specific jurisdiction. *Harrison v. Facebook, Inc.,* 2019 WL 1090779, at *4 (S.D. Ala. Jan. 17, 2019) ("This Court agrees with other courts that have held that 'personal jurisdiction over Facebook may not exist simply because a user avails himself of Facebook's services in a state other than the states in which Facebook is incorporated and has its principal place of business.'") (quoting *Ralls v. Facebook*, 221 F. Supp. 3d 1237, 1244 (W.D. Wash. 2016)); *see Atmos Nation, LLC v. All Fun Gifts Distribution, Inc.,* 2017 WL 5171174, at *4 (S.D. Fla. July 18, 2017) (holding

the "mere existence of a website accessible in Florida does not by itself support specific jurisdiction over the defendant in Florida.").

As in the above cases, Plaintiff does not identify any suit-related conduct by Meta in or directed to Florida. Rather, the FAC alleges claims based solely on Meta's alleged disablement of Plaintiff's Facebook account. *See, e.g.,* FAC ¶¶ 54-56. Plaintiff does not, and cannot, allege any specific acts directed to Florida in connection with the alleged decision.

Plaintiff's allegation that he was injured in Florida, which appears to be based solely on Plaintiff's residence in Florida, FAC ¶¶ 15-17, is irrelevant to the specific jurisdiction inquiry. Because specific jurisdiction focuses on the defendant's conduct, a plaintiff's allegation that he suffered injury in a state does not suffice to subject a defendant to personal jurisdiction there. *See Walden*, 571 U.S. at 288-89 (recognizing that specific jurisdiction over a defendant depends on "whether the *defendant's* actions" and not merely the plaintiff's conduct "connect [it] to the forum."); *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1342 (11th Cir. 2025) ("Personal jurisdiction cannot be predicated on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff.") (internal quotes omitted).

There is, accordingly, no specific jurisdiction over Meta. *See GarrettAlfred,* 540 F. Supp. 3d at 1136 (concluding that no specific jurisdiction existed over Facebook for claims that were not sufficiently related to its Florida

contacts); *Facebook, LLC v. Grind Hard Holdings, LLC*, 390 So. 3d 142, 145 (Fla. Dist. Ct. App. 2024) (same).[3] Accordingly the FAC should be dismissed for lack of personal jurisdiction alone.

## IV. THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Legal conclusions—even if couched as factual allegations—need not be accepted as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although pleadings from *pro se* litigants are generally construed "liberally," a court cannot "serve as *de facto* counsel" or "rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam, Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014).

### B. Plaintiff's Claims Are Barred by Section 230

[3] Nor can Plaintiff rely on Fed. R. Civ. P. 4(k)(2) to establish jurisdiction in this Court over Meta as he suggests (*see* FAC ¶ 26), because Meta is subject to California's courts of general jurisdiction. *See Unbeatablesale.com, Inc. v. Meta Platforms, Inc.*, No. 22-6369 (MAS) (RLS), 2023 WL 4764813, at *3 (D.N.J. July 26, 2023) ("[N]umerous courts have held that Meta is subject to general jurisdiction in California[.]")

The FAC fails because it is barred in its entirety by Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230. Section 230(c)(1) states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). "The majority of federal circuits have interpreted the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006); *see also M.H. v. Omegle.com, LLC*, 2022 WL 93575, at *5-6 (M.D. Fla. Jan. 10, 2022) (dismissing state and federal claims as barred by Section 230). (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir 1997). Courts accordingly hold that, under Section 230(c)(1), an interactive computer service provider like Meta cannot be held liable for removing content posted on its services by a third party. *See, e.g., Mezey v. Twitter, Inc.*, 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018) (dismissing claims predicated on suspension on Twitter account under Section 230 finding "[p]laintiff seeks to hold Twitter 'liable for its exercise of a publisher's traditional editorial functions"). And where it is apparent that Section 230(c)(1) applies on the face of the pleading, claims are properly disposed of at the motion to dismiss stage. *See id.*; *see also Castronuova v. Meta Platforms, Inc.*, 2025 WL 1914860, at *1 (N.D. Cal. June 10, 2025).

Under Section 230, a claim should be dismissed if (1) the defendant is a "provider … of an interactive computer service[;]" (2) the content at issue was "provided by another information content provider[;]" and (3) the plaintiff's claims treat the defendant as the "publisher or speaker" of that content. 47 U.S.C. § 230(c)(1). All three conditions are satisfied here.

### 1. Meta Is An Interactive Computer Service Provider

Courts have uniformly held that Meta, which provides interactive services like Facebook, is an interactive computer service provider. *See, e.g.*, *Loomer v. Zuckerberg*, 2023 WL 6464133, at *12 (N.D. Cal. Sept. 30, 2023), *aff'd*, 2025 WL 927186 (9th Cir. Mar. 27, 2025) (Meta qualifies as an interactive computer service provider); *Fed. Agency of News LLC v. Facebook, Inc.* 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) ("Facebook is unquestionably an interactive computer service."). Accordingly, the first Section 230 requirement is satisfied.

### 2. The Content at Issue Was Provided by Plaintiff Himself, Not Meta

Section 230(c)(1)'s second requirement is also met because the content at issue was provided by an "information content provider" other than Meta—namely, by Plaintiff himself. *See* 47 U.S.C. § 230(c)(1). This inquiry is simple where, as here, Plaintiff "created the relevant content associated with his [online] account." *Mezey*, 2018 WL 5306769, at *1 (citing *Sikhs for Justice*

*"SFJ," Inc. v. Facebook, Inc.*, 697 Fed. Appx. 526, 526-27 (9th Cir. 2017) (creator of Facebook page is "information content provider" under the CDA)); *see also Roca Labs, Inc. v. Consumer Op. Corp.*, 140 F. Supp. 3d 1311, 1323 (M.D. Fla. 2015) (holding creator of post is the "information content provider" not the hosting website). Plaintiff's claims all stem from the alleged disablement of his Facebook account, and he does not allege Meta played a role in developing the content at issue. *See* FAC ¶¶ 29, 53. The second Section 230 requirement is satisfied.

**3. The FAC Seeks to Hold Meta Liable for Its Purported Exercise of a Publisher's Traditional Editorial Function**

Section 230(c)(1)'s final requirement is met because Plaintiff's claims all seek to treat Meta as a "publisher" of third-party content. Under Section 230(c)(1), a claim treats a defendant as a "publisher" if it seeks to hold the defendant liable for its purported exercise of traditional "editorial functions"—such as deciding "whether to publish, withdraw, postpone or alter content created by third parties." *Doe v. Fenix Int'l*, 2025 WL 336741, at *7 (S.D. Fla. Jan. 23, 2025) "What matters in this analysis 'is not the name of the cause of action,' but 'whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another.'" *Montano v. Wash. State Dep't of Health*, 2024 WL 309155, at *14 (S.D. Fla. May 28, 2024) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir.

2009)); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015), *aff'd* 697 F. App'x 526 (9th Cir. 2017) (holding that "removing content is something publishers do" and that Section 230 barred a discrimination claim).

Here, all of Plaintiff's claims arise out of Meta's alleged disablement of his Facebook account, which is "precisely the kind of activity for which [S]ection 230 was meant to provide immunity." *Fair Hous. Council of San Fernando Valley v. Roomates.com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008); *see, e.g.*, FAC ¶¶ 53; 128 (alleging that "Plaintiff began marketing his RV repair business on Facebook" and that Meta "sever[ed] Plaintiff's access" to his account and that the "disablement cut of [plaintiff's] ability to purchase and run ads"). Courts have routinely dismissed claims, such as those here, premised on a defendant's decision to suspend or disable a user's account, restricting their ability to post content or otherwise access their account. *see, e.g., Castronuova*, 2025 WL 1914680, at *4 (collecting cases and dismissing discrimination claims predicated on Facebook account termination because account disablement was "protected publisher activity").

Accordingly, all three requirements of Section 230 are met. Plaintiff's claims should be dismissed in their entirety on this ground, as well.

### C. Each of Plaintiff's Claims Against Meta Also Fails as a Matter of Law

### 1. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981 (Counts I & II)

"To state a claim of race discrimination under § 1981, plaintiffs must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute[]" relating to the right to make and enforce contracts. *Horton v. Beacon Woods E. Master Ass'n*, 2025 WL 3089014, at *5 (M.D. Fla. Nov. 5, 2025) (quoting *Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1270 (11th Cir. 2004). Critically, § 1981 "can only be violated by purposeful discrimination[,]" so to survive a motion to dismiss, a plaintiff must plead facts sufficient to show intentional discrimination based on race. *Horton*, 2025 WL 3089014, at *5 (quoting *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)). "[A] plaintiff may establish intentional racism directly or circumstantially." *Horton*, 2025 WL 3089014, at *5. But "unsupported conclusions of law or of mixed law and fact are not sufficient to withstand a dismissal under Rule 12(b)(6)." *Jackson*, 372 F.3d at 1271.

Plaintiff fails to sufficiently plead either § 1981 claim because he does not plead *any* facts that plausibly support his assertion that Meta disabled his Facebook account because of his race. To the contrary, Plaintiff alleges only that (i) when a Vendor Defendant upheld the account disablement, the

reviewer was able to see his profile picture and government-issued identification, and (ii) Meta restored accounts for a handful of white users flagged under the same policy. FAC ¶¶ 147-150.[4] That is insufficient to plead either direct or circumstantial intentional discrimination.

To start, Plaintiff does not attempt to plead—nor could he—direct racial discrimination. To state a claim for direct racial discrimination, a plaintiff must allege the overt invocation of race by the alleged discriminator—for instance, the use of a racial slur or racially charged language." *Horton*, 2025 WL 3089014, at *5. Plaintiff makes no such allegation and thus does not plead a claim for direct racial discrimination.

Nor does Plaintiff plead any facts that could support a plausible circumstantial case of racial discrimination. Where, like here, a plaintiff asserts a disparate impact theory by pointing to white "comparators" who were treated differently, the *McDonnell Douglas* burden shifting framework applies. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1217 (11th Cir. 2019) (en banc). "Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by proving, among other things, that []he was treated differently from another 'similarly situated'

[4] Elsewhere in the FAC Plaintiff attempts to fault Meta for commissioning a Civil Rights Audit and a survey where the results allegedly suggested that Meta's automated content moderation tools "could exacerbate racial inequities." FAC ¶ 92. At most, these allegations show that Meta was actively trying to detect and address potential racial inequalities.

individual—in court-speak, a 'comparator.'" *Id.* To survive a motion to dismiss, Plaintiff must plead facts—not "unsupported conclusions of law or of mixed law and fact"—sufficient to raise a plausible inference that "he was treated differently from comparators who were similarly situated to him *in all material respects*." *Horton*, 2025 WL 3089014, at *6 (emphasis added) (citing *Jackon*, 372 F.3d at 1270-71).

The Eleventh Circuit is unequivocal that this is an exacting standard: "wholly unsupported charge[s]" that "defendants acted differently in cases not involving minority plaintiffs, even if it were supported by some specific facts or examples, is not sufficient to state a claim for racially motivated discrimination." *Jackson*, 372 F.3d at 1273. Rather, plaintiff must plead facts showing that the comparators are "similarly situated in all relevant respects besides race, since different treatment of dissimilarly situated persons does not violate the law." *Id.* (internal citations omitted). As such, courts in this District routinely dismiss complaints alleging discrimination "for failing to allege sufficient factual support for the comparators." *Horton*, 2025 WL 3089014, at *6 (collecting cases); *see also Mallory v. Gartner, Inc.,* 2021 WL 3857652, at *3 (M.D. Fla. Aug. 30, 2021) ("[Plaintiff] has not plausibly alleged that any similarly situated employees were treated differently.").

Here, like in *Jackson*, Plaintiff fails to identify a single similarly situated nonminority comparator that was treated differently. To the contrary, on the

face of the FAC, the alleged comparators are all differently situated. Plaintiff, for example, categorizes himself as a business owner, but his list of purported comparators includes no similarly situated Facebook users. *See* FAC at 17, ¶ 69. Instead, the alleged comparators are listed as one organization, two individuals, one content creator, and one artist. *Id.* The purported comparators' alleged violations are similarly all over the map. *Id.* The organization on the list, for example, allegedly received a CSE flag for posting a medical c-section video, and Plaintiff does not, and cannot, allege that his account was suspended for posting similar content. *Id.* Thus, far from being "similarly situated in all relevant respects beside race"—each appears differently situated from Plaintiff in all respects. *Jackson*, 372 F.3d at 1273. And thus, Plaintiff's conclusory allegations of intentional discrimination are "wholly unsupported by any specific factual averments," and his § 1981 claims should be dismissed. *Id.* at 1274.

### 2. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1982 (Count III)

Plaintiff's § 1982 claim fails for the same reasons as his § 1981 claim—he fails to plead any facts that raise a plausible inference of intentional discrimination. Because both claims require proof of intentional discrimination, courts analyze claims of racial discrimination under § 1982 and §1981 under the same framework. *CBOCS West, Inc. v. Humphries*, 553 U.S.

442, 447 (2008). Here, Plaintiff's § 1982 claim is based on the same underlying conduct as his § 1981 claim–the alleged disablement of his account based on a CSE violation. *Compare* FAC ¶¶ 125-148 *with id.* ¶¶149-158. As explained, Plaintiff fails to plausibly allege intentional racial discrimination for his §1981 claim, and his § 1982 claim suffers the same defects and should similarly be dismissed. *See supra* at 14-17; *Horton,* 2025 WL 3089014, at *6 (dismissing § 1982 claim where plaintiff failed to plead "facts sufficient to show that the restrictions. . . were imposed on him because of his race").

### 3. Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983 (Count IV)

Plaintiff's § 1983 claim fails because Meta is a private company, not a state actor. "To state a claim for relief in an action brought under § 1983, plaintiffs must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed **under color of state law**." *Myers v. US Bank Nat'l Ass'n*, 2025 WL 305924, at *3 (M.D. Fla. Jan. 27, 2025) (emphasis added). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* "The Eleventh Circuit has explained that 'only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes.'" *Woods v. Nat'l Ass'n of Realtors*, 2026 WL 445041, at *7 (M.D. Fla. Feb. 17, 2026). While the state action

doctrine can be complex, its application here is not. Here, Plaintiff argues that Meta can be treated as a state actor in connection with the alleged disablement of Plaintiff's account because (i) Meta allegedly reports some CSE violations to law enforcement and/or NCMEC and (ii) when it so reports, Meta is acting pursuant to a statutory requirement. *See* FAC ¶¶ 159-167. Not so.

Courts within the Eleventh Circuit analyze state action under the two-step framework in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). *See, e.g., McDonough v. Porter*, 2019 U.S. Dist. LEXIS 165921, at *2 (S.D. Fla. Sep. 25, 2019) (utilizing two-part *Lugar* framework to find plaintiff failed to plead state action). Under this framework, the first question is whether the alleged constitutional violation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* (internal quotations omitted). If the first step is satisfied, the next question is whether "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Id.* (quoting *Lugar*, 457 U.S. at 937).

Here, Plaintiff's claim fails the first step: Meta "did not exercise a state-created right when it … suspended his account." *O'Handley v. Weber*, 62 F.4th 1145, 1156 (9th Cir. 2023); *see also McDonough*, 2019 U.S. Dist. LEXIS 165921, at *4 (removing content from a Facebook pages "was not caused by the exercise of some right or privilege created by the state") (internal quotations omitted)

While this alone is fatal to his claim, Plaintiff also fails the second step.

Courts in the Eleventh Circuit apply three tests to determine whether a private company may fairly be said to be a state actor: "(1) the public function test, (2) the state compulsion test, and (3) the nexus test/joint action test." *Ridley v. Stewart*, 2008 U.S. Dist. LEXIS 32463, at *8-9 (M.D. Fla. Mar. 5, 2008) (quoting *Nat'l Broad. Co. v. Comm'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988)). Here, Plaintiff appears to base his claim on the state joint action and state compulsion tests, but he fails to adequately plead either.

Joint action exists only where the government has "so far insinuated itself into a position of interdependence with a private entity that [it] must be recognized as a joint participant in the challenged activity." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278 (11th Cir. 2003); *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 755-56 (9th Cir. 2024) (same). And "specificity" is required: "the plaintiff must 'plead in detail, through reference to material facts, the relationship or nature of the conspiracy' between the private person and the state actor." *Boles v. Riva*, 2013 WL 6388582, at *3 (M.D. Fla. Dec. 6, 2013) (quoting *Cox v. Mills*, 465 Fed. App'x 885, 887 (11th Cir. 2012)). "It is insufficient to 'merely string together discrete events, without showing support for a reasoned inference that the private and state actors agreed to violate the plaintiff's rights." *Id.*

Plaintiff does not plead any such interdependence or conspiracy. To the

contrary, Plaintiff alleges that Meta and the Vendor Defendants decide whether content violates the CSE policy and nowhere alleges government involvement in those decisions. FAC ¶¶ 82-85; *see Williams v. Google, LLC*, 2024 WL 5319216, at *3 (M.D. Ala. Nov. 26, 2024) (dismissing § 1983 claim where there were "no allegations in the complaint suggesting that Google acted jointly with the government…to take action against his YouTube channel"). Rather, Plaintiff's only allegation purporting to support "joint action" is that *if* "Meta submitted a [CyberTipline] report [for Plaintiff], NCMEC disseminated it to Florida law enforcement under § 2258A(g)(3), triggering state investigative processes and making [Meta] and state agencies joint actors." *Id.* ¶ 84; *see also id.* ¶ 162 (similar). Even crediting that hypothetical (and elsewhere contradicted)[5] allegation, it is well established that providing information to law enforcement is insufficient to establish joint action. *See Arline v. City of Jacksonville*, 359 F. Supp. 2d 1300, 1312-13 (M.D. Fla. 2005) ("This Court recognizes that merely alerting the authorities and providing information that may lead to an arrest is not sufficient to convert a private persons actions into public action."); *Rose v. Harris*, 2025 WL 1880311, at *13 (S.D. Fla. July 7, 2025) (reporting suspected child abuse did not satisfy the joint action test)*; see also United States v. Rosenow*, 50 F.4th 715, 730, 733 (9th

[5] *See* FAC ¶ 8 ("Meta filed no CyberTipline report.")

Cir. 2022) ("Our caselaw is clear that a private actor does not become a government agent simply by complying with a mandatory reporting statute," and "the record establishes that" Facebook has "legitimate, independent motivations" for investigating and reporting CSE material on its platform).

Plaintiff does not fare any better under the state compulsion test. Contrary to Plaintiff's arguments, compliance with a statutorily mandated reporting regime cannot make a party a state actor for purposes of § 1983. *See Arline v. City of Jacksonville*, 359 F, Supp. 2d 1300, 1312-1313 (M.D. Fla. 2005) (rejecting argument that compliance with law mandating reporting of suspected child abuse is sufficient to demonstrate state compulsion). Notably, this district and the Ninth Circuit have both already recognized, for Fourth Amendment purposes, that an online service provider's compliance with the NCMEC reporting statute does not convert it into a state actor. *See United States v. Williamson*, 2023 WL 4056324, at *13 (M.D. Fla. Feb. 10, 2023) (holding Yahoo!'s compliance with mandatory reporting to NCMEC under 18 U.S.C. § 2258A did not transform it into a state actor); *Rosenow*, 50 F.4th at 730 (same as to Meta). Accordingly, Plaintiff fails to show that this is one of the "rare circumstances [where] a private party [can] be viewed as a 'state actor' for section 1983 purposes.'" *Woods*, 2026 WL 445041, at *7.

Plaintiff's § 1983 claim also fails for the separate and independent reason that he fails to plead a violation of the Equal Protection Clause. Like

his other statutory claims, claims under the Equal Protection Clause require a showing of discriminatory intent. *Sumrall v. Georgia Dep't of Corrections*, 154 F. 4th 1304, 1313 (11th Cir. 2025) (noting that "to make out an equal protection claim, a plaintiff must prove purposeful, intentional discrimination") (internal quotations omitted). Accordingly, Plaintiff's reliance on conclusory allegations of intentional racial discrimination is also fatal to establishing a claim under the Equal Protection Clause. *See supra* at 14-17.

#### 4. Plaintiff Fails to State a Claim For Violation of 42 U.S.C.§ 1985(3) (Count V)

To state a claim under § 1985(3), Plaintiff must establish (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States. *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1379 (11th Cir. 1997).

The constitutional rights that are enforceable under § 1985(3), however, are limited against private actors, like Meta. "The purpose of § 1985 was to stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law, and, as such, a claim under

§ 1985(3) requires the proof of invidious discriminatory intent as well as the violation of a serious constitutional right protected not just from official, but also from private encroachment." *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002). "The list of protected rights under § 1985(3) is short." *Id.* (citing *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68, 113 S. Ct. 753, 122 L. Ed. 2d 34 (1993)). Only "select 'serious constitutional right[s]'" are included. *Jimenez v. WellStar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010) (citing *Cook v. Randolph County*, 573 F.3d 1143, 1157 (11th Cir. 2009)). "[T]he Eleventh Circuit has stated '[t]he only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude.'" *S. Fla. Muslim Fed'n Inc. v. Atrium TRS I LP*, 2025 U.S. Dist. LEXIS 89812, at *32 (S.D. Fla. May 12, 2025) (quoting *Jimenez*, 596 F.3d at 1312).

Critically, the Eleventh Circuit has explicitly recognized that "conspiracies to violate rights protected under § 1981 are…insufficient to form the basis of a § 1985(3)," and multiple courts within the Circuit have recognized that § 1982 claims are insufficient under the same rationale. *Jimenez,* 596 F.3d at 1312; *Horton*, 2025 WL 3089014, at *9 (dismissing § 1985(3) claim predicated on § 1982 holding "the [c]ourt cannot find, nor does [p]laintiff cite, any binding caselaw showing that a Section 1982 claim is cognizable under Section 1985(3)"); *Jones v. Scott Davis Chip Mill*, 2016 WL 3548810, at *5 (N.D.

Ala. June 30, 2016) (dismissing § 1985(3) claim predicated on alleged violations of § 1981 and § 1982 as non-actionable under *Jimenez*). Accordingly, since Plaintiff's 1985(3) claim is predicated solely on alleged violations of § 1981 and § 1982 (FAC ¶ 174), it is not actionable and must be dismissed.[6]

## V. PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND

Leave to amend is inappropriate where amendment would be futile. *See In re Engle Cases*, 767 F.3d 1082, 1108-09 (11th Cir. 2014). Plaintiff has already amended once, and any additional attempt will be futile, including because this court lacks personal jurisdiction over Meta. Moreover, Plaintiff is challenging Meta's alleged decision to disable his account and so all his claims will be barred by Section 230(c)(1) no matter what additional facts he pleads. *See, e.g.*, *Doe v. Kik Interactive,* 482 F. Supp. 3d 1242, 1252 (S.D. Fla. 2020) (denying leave to amend where plaintiff could not allege additional plausible facts to escape Section 230).

## VI. CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court dismiss the FAC without leave to amend.

[6] Even if such claims were actionable under § 1985(3), they are still insufficiently pleaded because, as shown above, he fails to state a claim under the predicate statutes and because he fails to plead any non-conclusory allegations of the alleged conspiracy. *Jimenez*, 596 F.3d at 1312 (failure to plead predicate violation was a separate independent basis to dismiss the 1985(3) claim); *Roy v. Bd. of Cty. Comm'rs Walton Cty.*, 2007 WL 9736174, at *12 (N.D. Fla. Mar. 20, 2007) (conclusory allegations of conspiracy are insufficient to state a claim—plaintiff must make specific averments of an agreement that "must be supported by facts bearing out the existence of a conspiracy").

## Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), on April 8, 2026, counsel for Meta contacted Plaintiff via email regarding this Motion to Transfer. As of the time of this filing, Plaintiff has not responded to the conferral email. Undersigned counsel will update this certification should Plaintiff respond to the conferral email.

Respectfully submitted,

Dated: April 9, 2026

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ *Diana Marie Fassbender*

DIANA MARIE FASSBENDER (BN 17095)
dszego@orrick.com
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8533
Facsimile: (202) 339-8500

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, and the foregoing via Email and U.S. Mail to:

Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
jayballentine@protonmail.com
yglazman.litigation@protonmail.com

s/ *Diana Marie Fassbender*
DIANA MARIE FASSBENDER