Marvelle J. Ballentine
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com
Plaintiff, *pro se*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

MARVELLE J. BALLENTINE,

      *Plaintiff,*

      v.

META PLATFORMS, INC.; ACCENTURE LLP;
TASKUS, INC.; and GENPACT LIMITED,

      *Defendants.*

Case No. 3:26-cv-05939
Hon. Rita F. Lin

**PROPOSED SECOND AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

1.    My name is Marvelle J. Ballentine. I am a Black citizen of the United States. I performed third-party contracts with customers and with the National RV Training Academy through a Facebook account that was the instrument of those contracts. On July 4, 2022, Meta issued a notice that interrupted my ability to perform those contracts and required me to submit government-issued identification to appeal. I submitted my United States passport. Meta transmitted the notice and my identity materials to a Codefendant. The Codefendant decided my appeal adversely to me with my race-visible identity materials displayed on the appeal interface. Meta then withheld my account-resident business property and interfered with my third-party contracts performed through the

1

Account. Meta has not returned Plaintiff to the third-party contracting capacity performed through the Account while similarly situated white users have been returned to theirs. I bring this action under 42 U.S.C. § 1981.

2.      Meta operates a shared appeal-decision workflow with the Codefendants under continuing services agreements. Meta had received information identifying racial disparities in enforcement outcomes affecting Black Facebook account-holders. Defendant Accenture's public Responsible AI position has acknowledged that algorithmic review without identity-masking produces differential error rates by race. Meta's own internal research between 2019 and 2021 identified racial disparities in enforcement outcomes. The workflow continued to operate without identity-masking on July 4, 2022.

3.      I held a continuing-education contract with the National RV Training Academy, performed through Facebook groups. I built a recreational-vehicle repair business and formed contracts to perform repairs for customers on the platform. My customers, my communications, my appointments, my creative work, and my credentials lived inside the Account.

4.      I respectfully ask this Court for declaratory relief, an order directing Meta to produce a copy of my account-resident business property, compensatory and punitive damages, and attorneys' fees and costs to the extent recoverable.

**JURISDICTION AND VENUE**

**A.      Subject-Matter Jurisdiction**

5.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4). Plaintiff's claim arises under 42 U.S.C. § 1981. The Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202.

**B.      Venue**

6.      Venue is proper in this District. This action was transferred to this District from the United States District Court for the Middle District of Florida under 28 U.S.C. § 1404(a) by order entered June 3, 2026, on the motion of Defendant Meta Platforms, Inc. Venue is independently proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim

occurred in this District. Defendant Meta Platforms, Inc. maintains its principal place of business in this District and operates the Facebook service from this District. Meta established and operates from this District the shared appeal-decision workflow described in Section D of the Factual Allegations, through which the Notice was issued and Plaintiff's appeal was decided.

**PERSONAL JURISDICTION**

**A.      Statutory and Constitutional Framework**

7.      Personal jurisdiction over each Defendant is predicated on California's long-arm statute, California Code of Civil Procedure § 410.10, which authorizes the exercise of jurisdiction on any basis not inconsistent with the Constitution of the United States, and on the requirements of due process under the Fourteenth Amendment to the United States Constitution.

8.      The conduct giving rise to Plaintiff's claim arose out of and is related to each Defendant's purposeful contacts with this State as set forth in the subsections that follow.

**B.      Personal Jurisdiction Over Meta Platforms, Inc.**

9.      Meta Platforms, Inc. is organized under the laws of Delaware and maintains its principal place of business in this District at 1 Hacker Way, Menlo Park, California. Meta is at home in California and is subject to the general personal jurisdiction of this Court.

10.      Meta operates the Facebook service from its principal place of business in California. Meta established and operates the shared appeal-decision workflow described in Section D of the Factual Allegations from its principal place of business in California. Meta authored the Notice and operated the appeal-decision workflow through which Plaintiff's appeal was decided.

11.      Plaintiff's claim arises out of and relates to Meta's California-based contacts alleged in this Subsection. The exercise of personal jurisdiction over Meta is consistent with traditional notions of fair play and substantial justice.

**C.      Jurisdictional Bases Common to All Codefendants**

12.      Each Codefendant performs appeal-decision services for Meta on a continuing basis under written services agreements with Meta within the shared appeal-decision workflow. Meta maintains its principal place of business in this District.

13. Each Codefendant purposefully directed its appeal-decision services into Meta's California-based appeal-decision workflow by contracting with Meta, a company at home in California, to decide account-holders' appeals within that workflow, and by using Meta-provided appeal interfaces to perform those services.

14. Each Codefendant participates in the shared appeal-decision workflow alleged in Section D of the Factual Allegations and uses Meta-provided appeal interfaces that display, alongside each transmitted notice, the account-holder's profile photograph and any government-identification image submitted to Meta.

15. Meta directed and supervised the shared appeal-decision workflow from California, including through California-based personnel.

16. Each Codefendant's appeal decisions were subject to Meta's implementation or rescission within the California-based appeal-decision workflow.

**D.     Personal Jurisdiction Over Accenture LLP**

17. Accenture LLP performs appeal-decision services for Meta on a continuing basis under written services agreements. Accenture LLP staffs approximately 5,800 personnel dedicated to performing appeal-decision services for Meta's platforms. Accenture LLP receives substantial annual revenue from its services agreements with Meta.

18. Accenture LLP's performance of appeal-decision services under its services agreement with Meta was purposefully directed into Meta's California-based appeal-decision workflow. Accenture LLP contracted with Meta, a company at home in California, to decide account-holders' appeals within that workflow and used Meta-provided appeal interfaces to perform those services. Plaintiff's claim arises out of and relates to Accenture LLP's purposeful contacts with this State. Accenture LLP purposefully availed itself of the privilege of conducting business directed at this State.

**E.     Personal Jurisdiction Over TaskUs, Inc.**

4

19.     TaskUs, Inc. performs appeal-decision services for Meta on a continuing basis under written services agreements. TaskUs, Inc. disclosed in its securities filings that its largest client comprised 22% of its fiscal-year 2024 revenue, which client was Meta Platforms, Inc.

20.     TaskUs, Inc.'s performance of appeal-decision services under its services agreement with Meta was purposefully directed into Meta's California-based appeal-decision workflow. TaskUs, Inc. contracted with Meta, a company at home in California, to decide account-holders' appeals within that workflow and used Meta-provided appeal interfaces to perform those services. Plaintiff's claim arises out of and relates to TaskUs, Inc.'s purposeful contacts with this State. TaskUs, Inc. purposefully availed itself of the privilege of conducting business directed at this State.

**F.     Personal Jurisdiction Over Genpact Limited**

21.     Genpact Limited performs appeal-decision services for Meta on a continuing basis under written services agreements.

22.     Genpact Limited's performance of appeal-decision services under its services agreement with Meta was purposefully directed into Meta's California-based appeal-decision workflow. Genpact Limited contracted with Meta, a company at home in California, to decide account-holders' appeals within that workflow and used Meta-provided appeal interfaces to perform those services. Plaintiff's claim arises out of and relates to Genpact Limited's purposeful contacts with this State. Genpact Limited purposefully availed itself of the privilege of conducting business directed at this State.

23.     In the alternative, to the extent Genpact Limited is not subject to personal jurisdiction in the courts of general jurisdiction of any State, this Court has personal jurisdiction over Genpact Limited under Fed. R. Civ. P. 4(k)(2). Genpact Limited is organized under the laws of Bermuda with its principal place of business in Bermuda. Plaintiff's claim arises from Genpact Limited's purposeful performance of appeal-decision services directed into Meta's United States-based appeal-decision workflow, and the exercise of jurisdiction is consistent with the Constitution and laws of the United States.

**PARTIES**

5

**A.    Plaintiff**

24.    Plaintiff Marvelle J. Ballentine is a Black citizen of the United States. Plaintiff resided in Florida at all times relevant to this action and resides in Florida as of the date of this Complaint. Plaintiff operated a mobile recreational-vehicle repair business in Florida and adjacent states. Plaintiff brings this action in his individual capacity.

**B.    Defendants**

25.    Defendant Meta Platforms, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 1 Hacker Way, Menlo Park, California 94025. Meta operates the Facebook service.

26.    Defendant Accenture LLP is a limited liability partnership that performs appeal-decision services for Meta. Accenture LLP performed services material to this action through facilities in Austin, Texas; Manila, Philippines; Warsaw, Poland; and other locations during the period relevant to this action. Accenture LLP staffed approximately 5,800 personnel dedicated to performing appeal-decision services for Meta's platforms during that period.

27.    Defendant TaskUs, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Texas. TaskUs performs appeal-decision services for Meta. TaskUs disclosed in its securities filings that its largest client comprised 22% of its fiscal-year 2024 revenue, which client was Meta Platforms, Inc.

28.    Defendant Genpact Limited is a corporation organized under the laws of Bermuda with its principal place of business in Bermuda. Genpact Limited performs appeal-decision services for Meta.

**C.    Defined Terms**

29.    Accenture LLP, TaskUs, Inc., and Genpact Limited are referred to collectively as "the Codefendants." Meta Platforms, Inc. and the Codefendants are referred to collectively as "Defendants."

30.    The Facebook account active on July 4, 2022 (the "Account") was the instrument through which Plaintiff performed his third-party contracts with customers and with the National RV

Training Academy. References to "account-resident business property" are references to Plaintiff's customer communications, customer contact records, business-page materials, and pending-appointment records stored within the Account.

31.    "Codefendant" means whichever of Accenture LLP, TaskUs, Inc., or Genpact Limited decided Plaintiff's appeal of the Notice. The Codefendant performs appeal-decision services for Meta under a continuing services agreement.

**JOINDER**

32.    Joinder of Defendants is proper under Fed. R. Civ. P. 20(a)(2). Plaintiff's claim arises out of the same series of transactions and occurrences — Meta's issuance of the Notice; Meta's transmission of the Notice and Plaintiff's identity materials to a Codefendant within the shared appeal-decision workflow described in Section D of the Factual Allegations; the Codefendant's adverse appeal decision; and Meta's withholding of Plaintiff's account-resident business property and interference with Plaintiff's third-party contracts performed through the Account — and present common questions of law and fact, including the application of 42 U.S.C. § 1981 to Defendants' conduct.

**ALTERNATIVE PLEADING AS TO CODEFENDANTS**

33.    Each Codefendant performed appeal-decision services for Meta during the period relevant to this action under a written services agreement. Each Codefendant received Meta-promulgated standard operating procedures, training materials, and protocol updates. Each Codefendant used Meta-provided appeal interfaces that displayed, alongside each transmitted notice, the account-holder's profile photograph and any government-identification image submitted to Meta. Each Codefendant decided account-holders' appeals subject to Meta's authority to act on or rescind those decisions.

34.    During the period relevant to this action, appeal-decision services within the shared appeal-decision workflow described in Section D of the Factual Allegations were performed exclusively by the Codefendants. No entity other than the Codefendants performed appeal-decision

7

services within that workflow during that period. Plaintiff's appeal of the Notice was decided within that workflow.

35.     The identity of the Codefendant that decided Plaintiff's appeal is not disclosed to the account-holder through the appeal interface, was not disclosed to Plaintiff by any Defendant, and is within Defendants' exclusive possession and control. Because Plaintiff's appeal was decided within the shared appeal-decision workflow, and because appeal-decision services within that workflow were performed exclusively by the Codefendants, Plaintiff's appeal was decided by Accenture LLP, TaskUs, Inc., or Genpact Limited. Plaintiff therefore pleads, under Fed. R. Civ. P. 8(d)(2) and 8(d)(3), in the alternative, that Plaintiff's appeal was decided by Accenture LLP; or by TaskUs, Inc.; or by Genpact Limited. Each alternative statement, standing alone, states a claim against the Codefendant so identified.

36.     Allegations concerning Plaintiff's appeal — including the visibility of Plaintiff's race-visible identity materials on the appeal interface, the adverse appeal decision, and appeal-decision causation — are pleaded against each Codefendant in the alternative as the Codefendant. Allegations concerning the shared appeal-decision workflow, Meta-provided appeal interfaces, standard operating procedures, training materials, and protocol updates are pleaded against each Codefendant based on that Codefendant's own participation in the shared appeal-decision workflow.

**FACTS**

**A.     Plaintiff and Commercial Relationships**

37.     Plaintiff resided in the Middle District of Florida at all times relevant to this action and resides in the Middle District of Florida as of the date of this Complaint. Plaintiff operated a mobile recreational-vehicle repair business serving customers in Florida and adjacent states. Plaintiff's business performed on-site repair services for owners of recreational-vehicle equipment and operated from Plaintiff's Florida residence.

38.     Plaintiff operated the recreational-vehicle repair business and Plaintiff personally entered into and held the customer and continuing-education contractual rights alleged in this Complaint.

8

39.     Plaintiff completed coursework offered by the National RV Training Academy. Plaintiff's enrollment with the National RV Training Academy entitled Plaintiff to continuing-education access through the National RV Training Academy Alumni Group, a Facebook Group operated by the National RV Training Academy. Plaintiff relied on continuing-education access through the National RV Training Academy Alumni Group to perform contracted customer services.

40.     Plaintiff invested approximately $20,000 in equipment and training to build the recreational-vehicle repair business described herein.

41.     At the time of the events giving rise to this action, Plaintiff sourced one hundred percent of his customers and leads through Facebook Groups and Facebook Messenger. As of July 4, 2022, Plaintiff had completed Facebook-sourced customer transactions totaling approximately $2,000 and held pending Facebook-sourced customer appointments valued at approximately $3,000.

42.     Each pending appointment involved an identified or identifiable customer, a proposed recreational-vehicle repair service, a proposed appointment date, and proposed compensation. The customer communications and records necessary to perform each pending appointment were stored within the Account.

43.     The following property of Plaintiff was stored within and accessed through the Account: Plaintiff's customer communications; Plaintiff's customer contact records; Plaintiff's business-page materials; Plaintiff's pending-appointment records; and Plaintiff's continuing-education access through the National RV Training Academy Alumni Group.

**B.      Contract Severance and Appeal**

44.     On July 4, 2022, Meta authored a notice (the "Notice") and transmitted the Notice to Plaintiff. Meta used the Notice as the basis for interrupting Plaintiff's ability to perform third-party contracts through the Account and cutting off Plaintiff's access to account-resident business property.

45.     The Notice provided a mechanism for Plaintiff to initiate an appeal.

46.     Meta required Plaintiff to submit government-issued identification as a precondition for appeal.

47.     Meta has never identified any factual basis for the Notice.

9

48. Plaintiff appealed the Notice and submitted his United States passport. Plaintiff's profile photograph and the image of Plaintiff's passport each displayed Plaintiff as a Black man.

49. Meta transmitted the Notice and Plaintiff's identity materials to a Codefendant within the shared appeal-decision workflow Meta operates. Plaintiff's profile photograph and the image of Plaintiff's United States passport were displayed on the Codefendant's appeal interface alongside the Notice.

50. The Codefendant decided Plaintiff's appeal adversely to Plaintiff with those materials so displayed, within hours of Plaintiff's submission of his passport. The adverse appeal decision controlled whether Plaintiff's third-party contracts performed through the Account would be restored or terminated and whether Plaintiff's account-resident business property would be returned. But for the Codefendant's adverse appeal decision, Meta would not have withheld Plaintiff's account-resident business property and would not have interfered with Plaintiff's third-party contracts performed through the Account.

51. Meta accepted and implemented the Codefendant's adverse appeal decision and did not exercise its retained authority to rescind that decision. Meta then withheld Plaintiff's account-resident business property and interfered with Plaintiff's third-party contracts performed through the Account.

52. On April 22, 2025, Plaintiff transmitted a demand to Meta to return Plaintiff's account-resident business property and rescind the acts described in this Section. Meta did not respond. Meta has not rescinded any act described in this Section as of the date of this Complaint.

53. The Notice carried an external-reporting attribute under Meta's ordinary protocols.

54. For notices carrying that attribute, Meta's ordinary protocols generate or preserve records reflecting any external report associated with the Notice, including the report date, reporting source, account identifier reported, designated recipient, and disposition.

55. No law-enforcement inquiry, charge, contact, or proceeding was directed at Plaintiff following the Notice.

56. Meta has not identified to Plaintiff any record generated or preserved under those protocols that connects the Notice to a factual predicate attributed to Plaintiff's Account.

10

57.    Meta has not identified any factual predicate attributed to Plaintiff's Account that distinguishes Plaintiff's Notice from notices issued to white account-holders who were restored to account access.

**C.    Comparators**

58.    Meta has returned white Facebook account-holders to third-party contracting capacity following account-level notices arising from identified factual predicates attributed to those account-holders. Plaintiff's Notice did not identify a factual predicate attributed to Plaintiff's Account, and Plaintiff was not returned to the third-party contracting capacity performed through the Account.

59.    Steven Ertelt and the comparator identified herein as COMP-1 received notices carrying the same external-reporting attribute described in Section B as Plaintiff's Notice, and each was returned to account access. The remaining white account-holders identified below were returned to account access following notices arising from identified factual predicates attributed to them. Each comparator is pleaded for a single differential-treatment variable: Meta returned white account-holders following notices arising from identified factual predicates attributed to them, and did not return Plaintiff following a Notice for which Meta has identified no factual predicate attributed to Plaintiff's Account.

**Table 1 — Comparator Allegations**

| Name | Race | Identified Factual Predicate Attributed to Account-Holder | Same External-Reporting Attribute as Plaintiff's Notice | Restored |
|---|---|---|---|---|
| Marvelle J. Ballentine | Black | No | Yes | No |
| Steven Ertelt | White | Yes | Yes | Yes |
| COMP-1 | White | Yes | Yes | Yes |
| Abby Covington | White | Yes | Not alleged | Yes |
| @slut.social | White | Yes | Not alleged | Yes |
| Betty Tompkins | White | Yes | Not alleged | Yes |

60.    Steven Ertelt is a white Facebook account-holder who operated an organization or business page. Meta issued Ertelt a notice carrying the same external-reporting attribute described in

Section B, arising from an identified factual predicate attributed to Ertelt's account. Following a reinstatement demand, Meta returned Ertelt to account access and to the contracting capacity performed through his account.

61. COMP-1 is a white Facebook account-holder. Meta issued COMP-1 a notice carrying the same external-reporting attribute described in Section B. Meta confirmed an identified factual predicate attributed to COMP-1's account. Following a temporary suspension, Meta returned COMP-1 to account access.

62. Each white comparator's notice arose from an identified factual predicate attributed to that comparator; Plaintiff's did not. Each white comparator was returned to account access; Plaintiff was not.

63. Meta has not identified any factual predicate attributed to Plaintiff's Account that distinguishes Plaintiff's Notice from the notices issued to the white account-holders identified above who were returned to account access.

**D. Shared Appeal-Decision Workflow**

64. Meta established the protocols of the shared appeal-decision workflow. The protocols are Meta's protocols.

65. Each Codefendant entered into a continuing services agreement with Meta to staff personnel performing appeal-decision services for Meta within the shared appeal-decision workflow.

66. Each Codefendant received from Meta standard operating procedures, training materials, and protocol updates governing the decision of account-holders' appeals.

67. Each Codefendant used Meta-provided appeal interfaces in the performance of appeal-decision services. The appeal interfaces were designed, configured, and provided by Meta.

68. The appeal interfaces Meta provided displayed, alongside each transmitted notice, the account-holder's profile photograph and any government-identification image submitted to Meta.

69. Each Codefendant decided account-holders' appeals on the appeal interface Meta provided.

70.     Following each Codefendant's appeal decision, Meta retained authority to act on or rescind that decision.

### E.     Knowledge of Racial Disparities

71.     Defendant Accenture's public Responsible AI position has acknowledged that algorithmic review without identity-masking produces differential error rates by race.

72.     Between 2019 and 2020, Meta commissioned and received an external civil-rights audit. The audit identified enforcement errors as among the most consistently cited complaints, documented concerns regarding algorithmic bias in Meta's enforcement systems, and identified Meta's appeals and penalty system as an area requiring further review.

73.     Between 2019 and 2021, Meta conducted internal research that identified racial disparities in enforcement outcomes. Meta did not deploy remediation responsive to that research. Meta has not published enforcement-outcome data disaggregated by race.

74.     According to a February 2021 internal Facebook report, the number of Black adult monthly Facebook users declined by approximately 2.7 percent in a single month, to approximately 17.3 million users.

75.     In January 2025, the executive who led Meta's civil-rights team announced his departure, and the members of that team were reassigned to other parts of Meta.

76.     Meta operates the shared appeal-decision workflow with knowledge of the external civil-rights audit and internal research described in this Subsection E. Accenture has acknowledged, through the public Responsible AI position described in this Subsection E, that algorithmic review without identity-masking produces differential error rates by race. The Codefendant that decided Plaintiff's appeal did so with Plaintiff's race-visible identity materials displayed on the appeal interface.

### COUNT I

**VIOLATION OF 42 U.S.C. § 1981 (Interference with Right to Make and Enforce**

**Contracts with Third Parties)**

*(Against All Defendants)*

13

77.    Plaintiff incorporates by reference the Alternative Pleading as to Codefendants and Sections A through E of the Factual Allegations as though fully set forth herein. This Count is pleaded against Meta Platforms, Inc. directly, and against Accenture LLP, TaskUs, Inc., and Genpact Limited in the alternative, as set forth in the Alternative Pleading as to Codefendants.

78.    Plaintiff is a Black citizen of the United States and asserts the right secured by 42 U.S.C. § 1981 to make and enforce contracts with third parties on the same terms as white citizens, free of racially motivated third-party interference with that right.

79.    At the time of the events of July 4, 2022, Plaintiff sourced one hundred percent of his customers and leads through Facebook. Plaintiff held a continuing-education contract with the National RV Training Academy, the benefits of which were performed through the National RV Training Academy Alumni Facebook Group.

80.    Meta's conduct and the Codefendant's conduct on July 4, 2022, as alleged in Section B, deprived Plaintiff of customer communications, customer contact records, business-page materials, pending-appointment records, and the benefits of his continuing-education contract with the National RV Training Academy.

81.    Meta's conduct and the Codefendant's conduct interfered with Plaintiff's ability to form, perform, modify, and enforce contracts with existing and prospective customers, including pending customer appointments valued at approximately $3,000.

82.    White Facebook account-holders whose notices carried the same external-reporting attribute as Plaintiff's Notice — Steven Ertelt and the comparator identified herein as COMP-1 — were returned to account access after those notices. Plaintiff was not returned to account access or to the third-party contracting capacity performed through the Account.

83.    Meta designed and provided the appeal interface that displayed Plaintiff's race-visible identity materials to the deciding Codefendant. Meta required Plaintiff to submit government-issued identification as a precondition for appeal and transmitted Plaintiff's race-visible identity materials into the shared appeal-decision workflow. Meta retained authority to accept, rescind, or override the

14

Codefendant's appeal decision. Meta accepted and implemented the adverse appeal decision, and refused restoration following Plaintiff's April 22, 2025 demand, while returning the white account-holders identified in Section C to account access. Meta operated the shared appeal-decision workflow with knowledge of the racial disparities alleged in Section E. Meta knew that an adverse appeal decision concerning the Account controlled whether Plaintiff would regain access to the account functions used to form and perform his third-party contracts.

84.     The Codefendant decided Plaintiff's appeal with Plaintiff's profile photograph and passport image, each displaying Plaintiff as a Black man, displayed on the appeal interface. The Codefendant decided Plaintiff's appeal adversely for a Notice for which Meta has identified no factual predicate attributed to Plaintiff's Account. The Codefendant knew that its appeal decision controlled whether the account-holder would regain access to the account functions reflected in the appeal interface.

85.     Accenture LLP, TaskUs, Inc., and Genpact Limited are named as the Codefendant in the alternative under the Alternative Pleading as to Codefendants, because the identity of the Codefendant that decided Plaintiff's appeal is within Defendants' exclusive possession and control.

86.     But for Plaintiff's race, the Codefendant would not have decided Plaintiff's appeal adversely.

87.     But for the Codefendant's adverse appeal decision, Meta would not have withheld Plaintiff's account-resident business property and would not have interfered with Plaintiff's third-party contracts performed through the Account.

88.     But for Plaintiff's race, Meta would have exercised its retained authority to rescind the adverse appeal decision, to return Plaintiff to the third-party contracting capacity performed through the Account, and to return Plaintiff's account-resident business property, as Meta did for the white account-holders identified in Section C.

89.     Meta's conduct and the Codefendant's conduct, pleaded against Accenture LLP, TaskUs, Inc., and Genpact Limited in the alternative, constituted racially motivated interference with

15

Plaintiff's right to make and enforce contracts with third parties on the same terms as white citizens, in violation of 42 U.S.C. § 1981.

90.     As a direct result of Meta's conduct and the Codefendant's conduct, Plaintiff lost the revenue from his pending Facebook-sourced customer appointments valued at approximately $3,000, lost the customer relationships and prospective repair contracts sourced through the Account, and lost the benefits of his continuing-education contract with the National RV Training Academy. Plaintiff has been damaged in an amount to be proven at trial.

**PRAYER FOR RELIEF**

91.     WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where appropriate, granting the following relief:

A.     A declaration that Defendants' operation of the appeal-decision workflow alleged herein, as applied to Plaintiff, violated 42 U.S.C. § 1981;

B.     An order directing Meta Platforms, Inc. to produce to Plaintiff a copy of Plaintiff's account-resident business property;

C.     Compensatory damages in an amount to be proven at trial;

D.     Punitive damages in an amount to be proven at trial;

E.     Attorneys' fees incurred through retained counsel, if any, recoverable under 42 U.S.C. § 1988, together with taxable costs; and

F.     Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury under Fed. R. Civ. P. 38 on all issues so triable.

16

Date: [ ]

Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
7862 W. Irlo Bronson Memorial Hwy #82
Kissimmee, FL 34747
(407) 794-6503
jayballentine@protonmail.com

17

**CERTIFICATE OF SERVICE**

I hereby certify that on [               ], I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notification of such filing to all counsel of record.

Marvelle J. Ballentine