MICHELLE VISSER (SBN 277509)
mvisser@orrick.com
SARAH N. DAVIS (SBN 275145)
sdavis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:     +1 415 773 5759

Attorneys for Defendants
Meta Platforms, Inc.and Genpact Limited

Devin S. Anderson (admitted pro hac vice)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: (801) 877-8115
Facsimile: (801) 877-8101
devin.anderson@kirkland.com

Attorney for Defendant Accenture LLP

(Additional counsel listed on next page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVELLE J. "JAY" BALLENTINE,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC., ACCENTURE LLP, GENPACT LIMITED, AND TASKUS, INC.<br><br>Defendants. | Case No. 3:26-cv-05939-RFL<br><br>**DEFENDANTS META PLATFORMS, INC., ACCENTURE LLP, GENPACT LIMITED, AND TASKUS, INC.'S CONSOLIDATED MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:    Hon. Rita F. Lin<br>Dept:     Courtroom 4 – 17th Floor<br>          San Francisco |

Christopher W. Keegan, P.C. (SBN 232045)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1882
Facsimile: (415) 439-1500
chris.keegan@kirkland.com

Attorney for Defendant Accenture LLP

Brittney L Turner, SBN 319818
brittney.turner@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
19191 S. Vermont Avenue, Suite 635
Torrance, CA  90502
Telephone:        310-217-8191
Facsimile:        310-217-8184

Kristin C. Christensen, SBN 286711
kristin.christensen@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Telephone:        415-442-4810
Facsimile:        415-442-4870

Attorneys for Defendants TASKUS, INC.

DEFS' MOT. TO DISMISS SECOND AM. COMPL.
No. 3:26-CV-5939-RFL

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE Defendants Meta Platforms, Inc. ("Meta"), Accenture LLP ("Accenture"), Genpact Limited ("Genpact"), and TaskUs, Inc. ("TaskUs) (collectively, "Defendants") will and hereby do move to dismiss Plaintiff Marvelle J. "Jay" Ballentine's Second Amended Complaint ("SAC"). Defendants seek an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing with prejudice Plaintiff's cause of action against each Defendant in its entirety because Plaintiff's claim is barred by Section 230(c)(1) of the Communications Decency Act and Plaintiff has otherwise failed to state a claim upon which relief can be granted under 42 U.S.C. § 1981. Per the Court's Standing Order for Civil Cases, Defendants have not noticed this motion for a hearing. Defendants believe this motion is suitable for disposition on the papers and do not expect to request a hearing.

The motion is based on this motion and the memorandum of points and authorities below.

Dated: August 13, 2026.

ORRICK, HERINGTON & SUTCLIFFE LLP

By: */s/ Michelle L. Visser*
Michelle L. Visser (SBN 277509)
Sarah N. Davis (SBN 275145)
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA
mvisser@orrick.com
sdavis@orrick.com
Telephone: (415) 773-5518
*Attorneys for Defendants*
*Meta Platforms, Inc. and Genpact Limited*

*/s/ Devin S. Anderson*
Devin S. Anderson (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: (801) 877-8115
Facsimile: (801) 877-8101
devin.anderson@kirkland.com

Christopher W. Keegan, P.C. (SBN 232045)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1882
Facsimile: (415) 439-1500
chris.keegan@kirkland.com

*Attorneys for Defendant Accenture LLP*

/s/  *Kristin C. Christensen*
Kristin C. Christensen, SBN 286711
kristin.christensen@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Telephone:        415-442-4810
Facsimile:        415-442-4870

Brittney L Turner, SBN 319818
brittney.turner@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C**.
19191 S. Vermont Avenue, Suite 635
Torrance, CA  90502
Telephone:        310-217-8191
Facsimile:        310-217-8184

*Attorneys for Defendants TASKUS, INC*

3

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................. 1

II.   BACKGROUND .............................................................................................................. 2

III.  LEGAL STANDARD ...................................................................................................... 5

IV.   ARGUMENT .................................................................................................................... 6

       A.    Plaintiff's Claims Against Each Defendant Are Barred By Section 230 ......... 6
             1.   *Each Defendant Is Either An Interactive Computer Service Provider or User* ..................................................................................................... 7
             2.   *The Content at Issue Was Provided by Plaintiff Himself, Not Any Defendant* ................................................................................................ 8
             3.   *The SAC Seeks to Hold Each Defendant Liable for Its Purported Exercise of a Publisher's Traditional Editorial Function* ........................ 9

       B.    Plaintiff Cannot Plead Around Section 230 in His SAC by Omitting Material Allegations from the FAC ................................................................. 10

       C.    Plaintiff Fails to State a Claim under 42 U.S.C. § 1981 ................................. 12

       D.    Plaintiff's Allegations Improperly Group the Vendor Defendants Together 15

       E.    Plaintiff Should Not Be Granted Leave to Amend ......................................... 16

V.    CONCLUSION ............................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................ 5

*Austin v. ABC Legal*,
2022 WL 1606293 (N.D. Cal. May 20, 2022) ..................................................................... 13

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .......................................................................................... 9, 12

*Barrett v. Rosenthal*,
146 P.3d 510 (Cal. 2006) ........................................................................................................ 8

*Beatport, LLC v. SoundCloud, Ltd.*
2020 WL 3977602 (C.D. Cal. July 13, 2020) ..................................................................... 15

*Beluca Ventures LLC v. Aktiebolag*,
622 F. Supp. 3d 806 (N.D. Cal. 2022) ................................................................................. 15

*Castronuova v. Meta Platforms, Inc.*,
2025 WL 1914860 (N.D. Cal. June 10, 2025) ................................................................... 7, 9

*Chinatown Neighborhood Ass'n v. Harris*,
794 F.3d 1136 (9th Cir. 2015) .............................................................................................. 15

*Cole v. Sunnyvale,*
2010 WL 532428 (N.D. Cal. Feb. 9, 2010) ............................................................... 6, 10, 13

*Davis v. Valon Mortg. Inc.*,
2023 WL 4661789 (D. Ariz. July 20, 2023) ........................................................................ 14

*East Coast Test Prep, LLC v. Allnurses.com*,
307 F. Supp. 3d 952, 965 (D. Minn. 2018) ............................................................................ 8

*Elansari v. Meta, Inc.*,
2024 WL 163080 (3d Cir. Jan. 16, 2024) ............................................................................ 10

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ............................................................................................. 6, 9

*Fed. Agency of News LLC v. Facebook, Inc.*,
395 F. Supp. 3d 1295 (N.D. Cal. 2019) ................................................................................. 8

*Fed. Agency of News LLC v. Facebook, Inc.*,
432 F. Supp. 3d 1107 (N.D. Cal. 2020) ................................................................................. 7

DEFS' MOT. TO DISMISS SECOND AM. COMPL.
NO. 3:26-CV-5939-RFL

*Floyd v. Saber Fitness Hegenberger, LLC*,
   2024 WL 2971669 (N.D. Cal. June 11, 2024) ........................................................................ 12

*Gray v. Apple Inc.*,
   2017 WL 1709327 (N.D. Cal. May 3, 2017) .......................................................................... 12

*Gueye v. Wells Fargo Bank*,
   2024 WK 1024740 (N.D. Cal. Mar. 7, 2024) ......................................................................... 14

*In re YogaWorks, Inc. Sec. Litig.*,
   2020 WL 2549290 (C.D. Cal. Apr. 23, 2020 ......................................................................... 10

*J. Edwards Jewelry Distributing, LLC v. Wells Farbo & Co.*,
   2019 WL 2329248 (N.D. Cal. May 31, 2019) ........................................................................ 11

*Jackson v. Loews Hotels, Inc.*,
   2019 WL 6721637 (C.D. Cal. July 24, 2019) ........................................................................... 5

*Johnson v. Lucent Techs., Inc.*,
   653 F.3d 1000 (9th Cir. 2011) ................................................................................................. 5

*Khoja v. Orexigen Therapeutics*,
   899 F.3d 988 (9th Cir. 2018) .................................................................................................... 5

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ................................................................................................ 12

*King v. Facebook, Inc.*,
   572 F. Supp. 3d 776 (N.D. Cal. 2021) ..................................................................................... 9

*Knight v. Wells Fargo Bank, N.A.*,
   459 F. Supp. 3d 1288 (N.D. Cal. 2019) ................................................................................ 12

*Lee v. Fin. Recovery Servs.*,
   2024 WL 5439275 (C.D. Cal. Nov. 14, 2024) ....................................................................... 11

*Loomer v. Zuckerberg*,
   2023 WL 6464133 (N.D. Cal. Sept. 30, 2023), *aff'd*, 2025 WL 927186 (9th
   Cir. Mar. 27, 2025) ................................................................................................................. 7

*McKenzie c. City of Milpitas*,
   738 F. Supp. 1293 (N.D. Cal. 2024) ...................................................................................... 12

*Mir v. State Farm Auto. Ins. Co.*,
   2019 WL 8355841 (C.D. Cal. Sept. 19, 2019) ...................................................................... 13

*Murphy v. Twitter, Inc.*,
   60 Cal. App. 5th 12 (2021) ...................................................................................................... 9

*Nayab v. Cap. One Bank (USA), N.A.*,
  942 F.3d 480 (9th Cir. 2019)............................................................................................. 5

*Ray v. Am. Airlines, Inc*,
  755 F. Supp. 3d 1277 (C.D. Cal. 2024)........................................................................... 14

*Reaud v. Facebook, Inc.*,
  2024 WL 4126066 (N.D. Cal. Sept. 9, 2024) ................................................................. 16

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
  144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd* 697 F. App'x 526 (9th Cir. 2017) .................... 9

*Smith v. Substack, Inc.*,
  2024 WL 3757501 (N.D. Cal. Aug. 12, 2024)................................................................... 7

*Snoqualmie Indian Tribe v. City of Snoqualmie*
  186 F. Supp. 3d 1155 (W.D. Wash 2016) ....................................................................... 14

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*
  782 F. Supp. 2d 1059 (E.D. Cal. 2011)........................................................................... 11

*TEEC Angel Mgmt, LLC v. Tsingyuan Ventures, LLC.*,
  2026 WL 166035 (N.D. Cal. Feb. 27, 2026)................................................................... 15

*Zango, Inc. v. Kaspersky Lab, Inc.*,
  568 F.3d 1169, 1173 (9th Cir. 2009)................................................................................ 8

**Statutes**

42 U.S.C. § 1981 .............................................................................................................*passim*

47 U.S.C. § 230 ...................................................................................................... 6, 7, 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

This case arises out of Meta Platforms, Inc.'s ("Meta") policy against "Child Sexual Exploitation" ("CSE"), whereby Meta prohibits content or activity that sexually exploits or endangers children. Pro se Plaintiff Marvelle J. "Jay" Ballentine brings this suit against Meta, Accenture LLP ("Accenture"), TaskUs, Inc. ("TaskUs") and Genpact Limited ("Genpact") (collectively, "Defendants"), alleging that Accenture, TaskUs, and Genpact (collectively, the "Vendor Defendants") are all vendors that review appeals from users challenging CSE (or other) policy violations on Meta's services. Plaintiff brings this suit against all Defendants because Meta allegedly disabled Plaintiff's Facebook account pursuant to Meta's CSE policy, and one of its vendors—he has no idea which—allegedly affirmed the disablement. Based solely on his allegations that a Vendor Defendant had access to information showing that Plaintiff is Black when it upheld the disablement and that, in a handful of other CSE enforcement cases (out of millions), Meta allegedly reversed the initial determinations for white users, Plaintiff summarily accuses Defendants of disabling his account based on his race and asserts a claim under 42 U.S.C. § 1981 ("Section 1981").

Plaintiff's Second Amended Complaint ("SAC") is the latest in a long series of complaints stemming from the alleged disablement of his Facebook account that Plaintiff has filed against some combination of the Defendants (and, remarkably, their counsel) across several courts. And, although Defendants have filed motions to dismiss each of Plaintiff's prior complaints, including motions to dismiss the same Section 1981 claim he asserts in the SAC, Plaintiff's litigation strategy of amending his complaints or voluntarily dismissing actions before Defendants' motions to dismiss are decided has prevented a ruling on the merits of Defendants' arguments for dismissal. Plaintiff's present Section 1981 claim fails for the same reasons as his prior Section 1981 claims and should be dismissed, with prejudice, for several reasons.

*First*, despite Plaintiff's attempts to plead around it, Plaintiff's claim against each Defendant is barred by Section 230(c)(1) of the Communications Decency Act ("Section 230"), which bars claims against interactive computer service providers and users based on the removal of content,

1

including user accounts, from their services. Plaintiff cannot circumvent that bar by bringing suit against Meta's vendors for content-moderation services or conspicuously replacing his prior allegations regarding the disablement of his Facebook account with vague allegations that Defendants interrupted his ability to perform third-party contracts.

*Second,* Plaintiff's claim under 42 U.S.C. § 1981 is insufficiently pled because Plaintiff fails to plead any facts showing that any Defendant engaged in intentional racial discrimination. Moreover, Plaintiff's Section 1981 claim against the Vendor Defendants fails for the independent reason that Plaintiff engages in improper group pleading, alleging that one of the Vendor Defendants affirmed his account disablement, without specifying which Vendor Defendant (if any) actually acted here.

## II.    BACKGROUND

**Procedural History:**[1] Plaintiff filed his original complaint against Meta and Accenture in this district on September 9, 2025, asserting claims under several federal civil rights statutes (including 42 U.S.C. § 1981) based on allegations that Meta disabled Plaintiff's Facebook account and Accenture affirmed the disablement because of Plaintiff's race. *See Marvelle J. "Jay" Ballentine v. Meta Platforms, Inc., et al.*, No. 3:25-cv-7671-CRB (N.D. Cal.). After Meta and Accenture moved to dismiss Plaintiff's complaint, and the court declined to allow him discovery pending resolution of the motions to dismiss and shortly before argument was scheduled on the motions, Plaintiff voluntarily dismissed this first action and re-filed his claims in the Middle District of Florida. *See* Dkt. No. 1.

In the Middle District of Florida, Plaintiff raised substantially similar claims as those raised in his original Northern District of California action, based on essentially identical factual allegations, but added Genpact and TaskUs as additional defendants. *Id.* In particular, Plaintiff alleged that he is a "Black business owner" who "operated [a] mobile RV repair business" and used Facebook for advertising purposes until Meta allegedly disabled his Facebook account on July 4,

---

[1] A full summary of Plaintiff's nearly year-long history of pursuing litigation against the Defendants across several different courts, including Plaintiff's practice of continuously filing amended complaints in response to motions to dismiss, voluntarily dismissing his complaints before resolution of the motions to dismiss, and seeking early discovery before any ruling on motions to dismiss, is contained in Defendants' Joint Status Report. *See* Dkt No. 148.

DEFS' MOT. TO DISMISS SECOND AM. COMPL.
NO. 3:26-CV-5939-RFL

2022, for violating Meta's CSE policy. *See* Dkt. No. 19, First Amended Complaint ("FAC") ¶¶ 28, 54. Plaintiff further alleged that he appealed the disablement but a human reviewer from one of the Vendor Defendants affirmed the disablement after receiving a copy of Plaintiff's U.S. passport, which included his photo. FAC ¶¶ 55–56. Plaintiff also alleged that in 2022, "Meta actioned approximately 105.9 million items under its [CSE] enforcement category[,]" including 92.2 million on Facebook alone, that 8,100 of those actions were reversed on appeal, and five of the individuals whose Facebook accounts were restored were white users. FAC ¶¶ 34, 67, 69–73. Based on these allegations, the FAC summarily asserted that all "Defendants acted because of Plaintiff's race," FAC ¶ 143, and brought claims against each of them under 42 U.S.C. §§ 1981, 1982, 1983, and 1985(3). FAC ¶¶ 137–77.

Each Defendant moved to dismiss Plaintiff's operative complaint in the Middle District of Florida, including on the ground that Section 230 barred all of Plaintiff's claims because they were based on Meta's alleged disablement of Plaintiff's Facebook account and a Vendor Defendant's alleged decision to affirm that disablement. Dkt. Nos. 29, 48, 85, and 96. Meta also moved to transfer the case to this District. Dkt. No. 87. After the court in the Middle District of Florida stayed discovery pending the resolution of Defendants' motions to dismiss, Plaintiff cross-moved to transfer the case back to the Northern District of California.[2] Dkt. No. 108. The case was transferred to this Court. Dkt. No. 121.

Following transfer, Plaintiff filed a Motion for Leave to File his SAC, which Defendants did not oppose, noting that the SAC remained deficient for the reasons identified in prior Motions to Dismiss but that Defendants were willing to re-brief their Motions to address Ninth Circuit law. Dkt. Nos. 141, 147. The Court granted Plaintiff's Motion for Leave to Amend and ordered Defendants to file a consolidated Motion to Dismiss, staying discovery pending resolution of that Motion to Dismiss. *See* Dkt. No. 151.[3]

---

[2] While in Florida federal court, Plaintiff also filed a petition for a writ of mandamus with the Eleventh Circuit, claiming his case was being mishandled by the district judge and magistrate judge. Dkt. No. 91. The Eleventh Circuit denied that petition. Dkt. No. 109.

[3] Beyond the claims raised in this action, Plaintiff has also filed several different actions in other courts raising baseless claims against some combination of the Defendants. These actions include: (1) a defamation action against Meta and counsel for Accenture based on arguments in Accenture's

DEFS' MOT. TO DISMISS SECOND AM. COMPL.
NO. 3:26-CV-5939-RFL

**The SAC's Allegations:** As before, Plaintiff alleges that he is a "Black citizen of the United States" who "operated a mobile recreational-vehicle repair business in Florida and adjacent states" and sourced customers through Facebook. SAC ¶ 24. In particular, the SAC alleges that Plaintiff "performed third-party contracts with customers and with the National RV Training Academy through a Facebook account*," Id.* ¶ 1, and used his Facebook account to access the "National RV Training Academy Alumni Group" and to "source[] one hundred percent of his customer and leads." *Id.* ¶¶ 39; 41; *see also* FAC ¶ 53 (alleging that "[i]n June 2022, Plaintiff began marketing his RV repair business on Facebook").

The SAC, however, omits all references to Meta allegedly disabling Plaintiff's Facebook account pursuant to its CSE policy on July 4, 2022, and instead alleges that "[o]n July 4, 2022, Meta authored a [N]otice" and "used the Notice as the basis for interrupting Plaintiff's ability to perform third-party contracts through [his Facebook] Account and cutting off Plaintiff's access to account-resident business property." SAC ¶ 44. The SAC provides no details regarding what the Notice stated or what content Plaintiff posted to Facebook. The SAC goes on to allege that Plaintiff "appealed the Notice and submitted his United States passport" as "government-issued identification." *Id.* ¶¶ 46; 48. The SAC further alleges that one of the Vendor Defendants (without specifying which[4]) "decided Plaintiff's appeal adversely to Plaintiff" after receiving his appeal materials including his "profile photograph and … passport." *Id.* ¶¶ 49–50. The SAC alleges that "Meta accepted and implemented the [Vendor Defendant's] adverse appeal decision." *Id.* ¶ 51.

Motion to Dismiss in Plaintiff's original N.D. Cal. Action (*Ballentine v. Accenture LLP, et al.*, No. 5:26-cv-472 (M.D. Fla.)), which the district court dismissed based on Plaintiff's "failure to comply with the Standing Order" regarding the disclosure of the use of artificial intelligence and Plaintiff's "inability to certify compliance with Rule 11 of the Federal Rules of Civil Procedure," Order, *Ballentine v. Accenture LLP, et al.*, No. 5:26-cv-472 (M.D. Fla. July 24, 2026), Dkt. No. 80; (2) a Florida state court action raising both the civil rights claims raised in this action and Plaintiff's defamation claims (*Ballentine v. Meta Platforms, Inc., et al.*, No. 5:26-cv-213 (M.D. Fla.), removed from No. 35-2026-CA-000494 (Cir. Ct. Lake Cnty.)); and (3) most recently, a complaint against the National Center for Missing & Exploited Children ("NCMEC") and its corporate counsel in the Eastern District of Virginia based on allegedly defamatory language in a letter sent by NCMEC to Plaintiff in response to a subpoena (*Ballentine v. Katie Hall, et al.*, No. 1:26-cv-2331 (E.D. Va.)).

[4] Plaintiff's SAC defines the Vendor Defendants as "Codefendants" and refers to them collectively as such throughout. *See* SAC ¶ 29.

The SAC also continues to allege that the same five purportedly white comparators named in the FAC (Steven Ertelt, COMP-1, Abby Covington, @slut.social, and Betty Tompkins, FAC ¶¶ 69–73) were treated differently. Again, however, the SAC omits all reference to CSE policy disablements and instead alleges that Meta "has returned white Facebook account-holders to third-party contracting capacity following account-level notices arising from identified factual predicates attributed to those account-holders." SAC ¶ 58. The SAC goes on to clarify that this means Meta reenabled their access to their Facebook accounts. *Id.* ¶ 61 ("Following a temporary suspension, Meta returned COMP-1 to account access."); *Id.* ¶ 62 ("Each white comparator was returned to account access; Plaintiff was not.").

Based on these allegations, Plaintiff summarily asserts that, "[b]ut for Plaintiff's race," the Vendor Defendants "would not have decided Plaintiff's appeal adversely" and Meta "would not have interfered with Plaintiff's third-party contracts," SAC ¶¶ 50, 86–88, and brings a single claim under 42 U.S.C. § 1981 alleging that the Defendants' conduct "constituted racially motivated interference with Plaintiff's right to make and enforce contracts with third parties." *Id.* ¶ 89.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 495–96 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 496. Although well-pleaded factual allegations are assumed to be true, "the court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation modified). And while pro se pleadings are construed "liberally," a pro se plaintiff must still allege "factual matter" sufficient "to state a claim to relief that is plausible on its face." *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010–11 (9th Cir. 2011) (citation omitted). Where an amended complaint "*omits* previously-pled material information that harms Plaintiff's case," the Court may consider the prior pleadings because the allegations are "appropriately characterized as judicial admissions." *Jackson v. Loews Hotels, Inc.*, No. ED CV

18-827, 2019 WL 6721637, at *3 (C.D. Cal. July 24, 2019); *see also Cole v. Sunnyvale*, No. C-08-05017, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) ("The court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the [operative] Complaint plausibly suggests an entitlement to relief . . . .").

## IV.    ARGUMENT

Plaintiff's claim fails as a matter of law. First and foremost, Plaintiff's claim is barred by Section 230 of the Communications Decency Act because it seeks to hold Defendants liable for a protected publication decision. Plaintiff cannot circumvent that bar by conspicuously replacing his allegations from prior complaints regarding the disablement of his Facebook account with vague allegations that Defendants interrupted his ability to perform third-party contracts. Further, Plaintiff's claim also fails for the independent reason that he does not plead any facts that plausibly support his assertion that Defendants acted because of his race, as Section 1981 requires. And the SAC fails as to each of the Vendor Defendants because it improperly asserts claims against the Vendor Defendants collectively, without specifying which of the Vendor Defendants were responsible for the specific acts alleged in the SAC. The Court should dismiss Plaintiff's claim with prejudice.

### A.    <u>Plaintiff's Claims Against Each Defendant Are Barred By Section 230</u>

Plaintiff's SAC fails because it is barred in its entirety by Section 230(c)(1) of the Communications Decency Act ("CDA"), 47 U.S.C. § 230. Section 230(c)(1) states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230(e)(3) further states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). The Ninth Circuit has accordingly held that, under Section 230(c)(1), an interactive computer service provider or user cannot be held liable for removing content published on its services by a third party. *See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). And where it is apparent

that Section 230(c)(1) applies on the face of the pleading, claims are properly disposed of at the motion-to-dismiss stage. *See, e.g.*, *Castronuova v. Meta Platforms, Inc.*, No. 4:24-cv-02523, 2025 WL 1914860, at *3 (N.D. Cal. June 10, 2025); *Smith v. Substack, Inc.*, 2024 WL 3757501, at *5 (N.D. Cal. Aug. 12, 2024) (dismissing claims under Section 230(c)(1) at the pleading stage).

Under Section 230, a claim should be dismissed if (1) the defendant is a "provider or user of an interactive computer service[;]" (2) the content at issue was "provided by another information content provider[;]" and (3) the plaintiff's claims treat the defendant as the "publisher or speaker" of that content.  47 U.S.C. § 230(c)(1). All three conditions are satisfied here.

### 1.   *Each Defendant Is Either An Interactive Computer Service Provider or User*

***Meta is an Interactive Computer Service Provider.*** Courts have uniformly held that Meta, which owns and operates interactive services like Facebook, is an interactive computer service provider. *See, e.g.*, *Loomer v. Zuckerberg*, No. 22-cv-02646, 2023 WL 6464133, at *12 (N.D. Cal. Sept. 30, 2023) (Meta qualifies as an interactive computer service provider), *aff'd*, No. 23-3158, 2025 WL 927186 (9th Cir. Mar. 27, 2025); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1117 (N.D. Cal. 2020) ("Facebook is unquestionably an interactive computer service . . . .").

***Each Vendor Defendant is either a User or Provider of An Interactive Computer Service Provider.*** Similarly, in the context of the SAC's allegations, interpreted against the backdrop of the FAC's allegations,[5] each of the Vendor Defendants qualifies for Section 230 protection either as a "user" or a "provider" of an "interactive computer service." Indeed, to conclude otherwise would disincentivize the "utilization of blocking and filtering technologies" on the internet, directly contradicting the codified purposes of the CDA. 47 U.S.C. § 230(b)(4).

First, each vendor defendant is a "user" of an interactive computer service—Facebook— because, according to the allegations, each Vendor Defendant would necessarily access Facebook-content and use Facebook tools to provide content moderation services. *See, e.g.*, SAC ¶¶ 64–69 (alleging that each Vendor Defendant "received from Meta standard operating procedures," "used

---

[5] As outlined in Part IV.B, the Court should consider Plaintiff's allegations in the FAC in construing the allegations in the SAC because they are necessary to understand Plaintiff's claim.

DEFS' MOT. TO DISMISS SECOND AM. COMPL.
NO. 3:26-CV-5939-RFL

Meta-provided appeal interfaces … designed, configured, and provided by Meta" and "decided [Facebook] account-holders' appeals on the appeal interface Meta provided"). Although Section 230 does not define or give examples of who qualifies as a "user," courts have found that "standard rules of statutory construction … yield an unambiguous result[;]" a 'user' is simply "someone who uses an interactive computer service." *Barrett v. Rosenthal*, 40 Cal. 4th 33, 58-59 (2006); *see also E. Coast Test Prep LLC v. Allnurses.com, Inc.* 307 F. Supp. 3d 952, 965 (D. Minn. 2018) (holding that "[m]oderator of third-party content" was entitled to CDA immunity against defamation claims based on posts by other users under Section 230(c)(1)).

Each Vendor Defendant is also entitled to protection in its alleged content moderation role through Meta as a "provider." Because Section 230 shields from liability those who, like Meta, provide "software … or enabling tools that … filter, screen, allow, or disallow content," 47 U.S.C. § 230(f)(4), it follows that content-moderation services providers like each of the Vendor Defendants are also immune from liability for those actions. *See* SAC ¶ 12 (alleging that "[e]ach Codefendant performs appeal-decision services for Meta"); *see also* FAC ¶ 123 (alleging that "[e]ach vendor processed appeals, affirmed outcomes, and applied Meta's standard operating procedures"); *see generally Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1174–75 (9th Cir. 2009) (holding that a program that filtered adware and malware qualified for protection under Section 230 is a "provider" of an interactive computer service and rejecting Plaintiff's arguments that Section 230 was not intended to reach "companies that provide access to tools or mechanisms for filtering content").

Accordingly, Section 230's first condition is met as to each Defendant, either as a "user" or "provider" of an interactive computer service.

2.    ***The Content at Issue Was Provided by Plaintiff Himself, Not Any Defendant***

Section 230(c)(1)'s second requirement is also met because the content at issue was provided by an "information content provider" other than any of the Defendants—namely, by Plaintiff himself. *See* 47 U.S.C. § 230(c)(1). This inquiry is simple where, as here, the "complaint admits that [the Plaintiff] is the source of the information that [Defendants] removed" while "nowhere alleg[ing] that [Defendant] provided, created, or developed any portion" of the content.

DEFS' MOT. TO DISMISS SECOND AM. COMPL.
No. 3:26-CV-5939-RFL

*Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1305–06 (N.D. Cal. 2019); *see e.g.,* SAC ¶ 79 (alleging that Plaintiff used his Facebook account to "source[ ] … customers and leads"); *see also* FAC ¶ 53 ("Plaintiff began marketing his RV repair business on Facebook."). Here, Plaintiff's claims all stem from the alleged disablement of his Facebook account, and he does not allege any Defendant played any role in developing the content posted via that Facebook account. The second Section 230 requirement is satisfied.

3.    ***The SAC Seeks to Hold Each Defendant Liable for Its Purported Exercise of a Publisher's Traditional Editorial Function***

Section 230(c)(1)'s final requirement is met because Plaintiff's allegations seek to treat Defendants as a "publisher" of third-party content. Under Section 230(c)(1), a claim treats a defendant as a "publisher" if it seeks to hold the defendant liable for its purported exercise of traditional "editorial functions"—such as deciding "whether to publish, withdraw, postpone or alter content created by third parties." *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 17 (2021). "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council*, 521 F.3d at 1170–71. What matters here is not the "name of the cause of action," but "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, [S]ection 230(c)(1) precludes liability." *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009); *Sikhs for Just. "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) (holding that "removing content is something publishers do" and that Section 230 barred a discrimination claim) (citation omitted), *aff'd* 697 F. App'x 526 (9th Cir. 2017).

Here, all of Plaintiff's claims arise out of the alleged disablement of Plaintiff's Facebook account, which is "precisely the kind of activity for which [S]ection 230 was meant to provide immunity." *Fair Hous. Council*, 521 F.3d at 1170 (footnote omitted). Courts in this district and beyond have routinely dismissed claims, such as those here, premised on a defendant's decision to suspend or terminate a user's account, restricting their ability to post or otherwise access their account. *See, e.g.*, *King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 795 (N.D. Cal. 2021) (holding that "Facebook has CDA immunity … to the extent that [plaintiff's] claim is based on Facebook's disabling of [plaintiff's] account"); *Castronuova*, 2025 WL 1914860, at *4 (holding that complaint

based on defendants alleged "decisions to remove or exclude, including by suspending … plaintiff's accounts" for politically discriminatory reasons was barred by Section 230); *Elansari v. Meta, Inc.*, No. 22-3060, 2024 WL 163080, at *1–2 (3d Cir. Jan. 16, 2024) (recognizing that Section 230 bars claims under 42 U.S.C. § 1981 alleging that Meta disabled accounts for racially discriminatory reasons).

Accordingly, all three requirements of Section 230 are met, and Plaintiff's claim should be dismissed in its entirety with prejudice.

### B.    Plaintiff Cannot Plead Around Section 230 in His SAC by Omitting Material Allegations from the FAC

The Court should consider Plaintiff's allegations in the FAC in construing the allegations in the SAC. In an apparent attempt to creatively plead around the application of Section 230 to bar his claim, the SAC omits several material allegations necessary to understand Plaintiff's factual allegations. In particular, the SAC bases Plaintiff's entire case on (1) a "Notice" he allegedly received from Meta on July 4, 2022, which purportedly interrupted his ability to perform third-party contracts through Facebook; and (2) a Vendor Defendant's alleged decision to uphold the Notice on appeal. But the SAC is silent on the content of the alleged Notice, and for obvious reasons. The FAC clearly alleges that the Notice informed Plaintiff that Meta had disabled his account for violating Meta's CSE policy and, when Plaintiff tried to appeal the account disablement, an unnamed Vendor Defendant upheld it. FAC ¶¶ 54–57. Because claims based on such account disablement decisions are squarely barred by Section 230, each Defendant moved to dismiss the FAC in its entirety under Section 230. Plaintiff responded by trying to excise all references to the account disablement and Meta's CSE policy from his SAC. But removing allegations from an amended complaint does not "simply erase those allegations from the case[,]" and the court "may consider" Plaintiff's original "allegations as part of its context-specific inquiry into whether the [SAC] plausibly suggests an entitlement to relief . . . ." *In re YogaWorks, Inc. Sec. Litig.*, No. CV 18-10696, 2020 WL 2549290, at *3 (C.D. Cal., Apr. 23, 2020) (citation modified); *see also Cole*, 2010 WL 532428, at *4 (same).

Similarly, whereas the FAC plainly alleged that Plaintiff "market[ed] his RV repair business

on Facebook" (FAC ¶ 53), the SAC now omits any reference to content posted by Plaintiff through his Facebook account, instead referring to the Facebook account only as "the instrument through which Plaintiff performed [] third-party contracts." SAC ¶ 30. Again, this omission is a blatant attempt to evade the application of Section 230, which, as set forth above, applies when the plaintiff's claims treat the defendant as the publisher or speaker of *content* that the defendant itself did not provide.

As a result of these omissions, the SAC, if considered alone, presents an incomplete and confusing picture of Plaintiff's factual allegations and obscures Plaintiff's allegations that his Facebook account was disabled and that he advertised his business on his Facebook account. Because the SAC omits key factual allegations necessary to understand Plaintiff's claims, and does not explain the omissions or contradict those prior allegations, the Court should consider the FAC's factual allegations to properly evaluate Plaintiff's allegations and claim in the SAC. *See, e.g.*, *J. Edwards Jewelry Distrib., LLC v. Wells Fargo & Co.*, No. 18-cv-03886, 2019 WL 2329248, at *4 (N.D. Cal. May 31, 2019) (holding that the "fact that Plaintiff has now eliminated these allegations and this exhibit from its SAC does not impact the Court's analysis" because the "'Court does not ignore the prior allegations in determining the plausibility of current pleadings.'" (quoting *Stanislaus Food Prods., Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011))).

Plaintiff's attempt to creatively plead around Section 230 in his SAC by omitting prior allegations about the advertising content posted on his Facebook account and by framing the alleged disablement of his Facebook account simply as the sending of a "Notice" that interrupted his ability to perform contracts and access his account-resident property therefore does not change the outcome. *See Lee v. Fin. Recovery Servs.*, No. 5:24-cv-00861, 2024 WL 5439275, at *2 (C.D. Cal. Nov. 14, 2024) (noting that plaintiff "cannot … avoid dismissal simply by eliminating allegations … especially where she fails to explain why she decided to omit such adverse facts in the amended complaint"). No matter how Plaintiff frames his allegations, at bottom, Plaintiff's claim is premised on Meta's alleged decision to disable Plaintiff's Facebook account and an

unnamed Vendor Defendant's decision to uphold that disablement.[6] Courts have rejected similar attempts to "circumvent the CDA's protections through 'creative' pleading." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265–66 (9th Cir. 2016) (affirming dismissal of complaint under Section 230, rejecting plaintiff's "artful skirting" of Section 230 based on plaintiff's "apparent[] hope[] to plead around the CDA to advance the same basic argument that the statute plainly bars"); *see also Barnes*, 570 F.3d at 1102 (noting that, for purposes of Section 230 immunity, "what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another").

## C.     Plaintiff Fails to State a Claim under 42 U.S.C. § 1981

Even beyond the deficiencies described above, Plaintiff's claim still fails as a matter of law. To state a claim under § 1981, a plaintiff must "allege (1) he is a member of a protected class, (2) he attempted to contract for certain services, and (3) he was denied … the right to make or enforce a contract." *Knight v. Wells Fargo Bank N.A.*, 459 F. Supp. 3d 1288, 1291 (N.D. Cal. 2019). "Because claims brought under § 1981 are grounded in the Equal Protection Clause of the Fourteenth Amendment, an 'essential element' of a valid § 1981 action is that the defendant 'acted with the intent to discriminate on the basis of race.'" *Floyd v. Saber Fitness Hegenberger, LLC*, No. 24-cv-01278, 2024 WL 2971669, at *7 (N.D. Cal. June 11, 2024) (emphasis omitted) (quoting *McKenzie v. City of Milpitas*, 738 F. Supp. 1293, 1301 (N.D. Cal. 1990)). "Thus, to establish a claim under § 1981, the plaintiff must show overt acts by the defendant, 'coupled with some direct evidence that the defendant's conduct was motivated by racial animus.'" *Id.* (citation omitted). "Mere conclusory allegations of intentional discrimination will not suffice." *Gray v. Apple Inc.*, No.16-cv-04421, 2017 WL 1709327, at *3 (N.D. Cal. May 3, 2017) (citation omitted).

Plaintiff fails to sufficiently plead a § 1981 claim because he does not plead *any* facts that plausibly support his assertion that Meta disabled his Facebook account or that any of the Vendor Defendants upheld the disablement because of his race. To the contrary, the SAC's assertion that

---

[6] Even if the Court does not interpret the SAC's vague allegations of a Notice that interrupted Plaintiff's ability to perform contracts against the backdrop of the SAC, which makes clear Plaintiff is referring to Meta's disablement of his Facebook account, other allegations in the SAC clarify that this is what Plaintiff is referring to. For example, the purported "Comparator" allegations show that underlying conduct involved alleged account suspensions and "return[s] to account access." SAC ¶¶ 61-62.

DEFS' MOT. TO DISMISS SECOND AM. COMPL.
No. 3:26-CV-5939-RFL

Defendants' alleged actions were racially motivated is based solely on the SAC's allegations that (i) when a reviewer from one of the Vendor Defendants adversely decided Plaintiff's appeal, the reviewer was potentially able to see Plaintiff's profile picture and his government-issued identification, *see* SAC ¶ 84, and (ii) Meta restored accounts for a handful of "[w]hite [Facebook] account-holders" who allegedly received similar notices. *Id.* ¶ 82.[7]

But the mere fact that a Vendor Defendant (or Meta) had access to Plaintiff's photos and thus arguably had constructive notice that Plaintiff is Black does nothing to establish that any Defendant was motivated by race when Meta allegedly disabled Plaintiff's Facebook account pursuant to its CSE policy and a Vendor Defendant allegedly upheld the disablement on appeal. *See Mir v. State Farm Mut. Auto. Ins. Co.*, No. 2:19-cv-03960, 2019 WL 8355841, at *2 (C.D. Cal. Sept. 19, 2019) ("Mere knowledge of Plaintiff's ethnicity coupled with a conclusory assertion of discriminatory animus for Defendant's action does not create a plausible inference necessary" for § 1981 claim "to survive a 12(b)(6) motion"); *Austin v. ABC Legal*, No. 21-cv-09076, 2022 WL 1606293, at *1, 3 (N.D. Cal. May 20, 2022) (dismissing § 1981 claim because allegations that defendant "knew plaintiff was a black man due to … Pictures (for ID verification) … and via self-identification" were insufficient to show discriminatory intent).

Similarly, Plaintiff's allegation that—out of over 105.9 million CSE actions and over 8,100 reversals,[8] FAC ¶¶ 94, 97—there exist a handful of white users whose Facebook accounts were restored after being flagged under the same CSE policy does not raise a plausible inference of any type of discrimination, much less the intentional discrimination that Section 1981 claims require.

---

[7] Elsewhere in his SAC, Plaintiff attempts to fault several of the Defendants for affirmatively evaluating their practices and tools for potential racial disparities. *See* SAC ¶¶ 71-76. For example, Plaintiff alleges that Meta commissioned an external Civil Rights Audit and conducted internal research where the results allegedly suggested "concerns regarding algorithmic bias in Meta's enforcement systems" and "racial disparities in enforcement outcomes. *Id.* ¶¶ 72-74. Similarly, the SAC alleges that Accenture's "public Responsible AI position has acknowledged that algorithmic review" could "produce[] differential error rates by race." *Id.* ¶ 71. At most, these allegations show that Defendants were actively trying to detect and address potential racial disparities.

[8] The FAC's allegations regarding the total number of CSE actions and reversals illustrated that a sample set of five alleged reversals is wholly inadequate to plausibly suggest a pattern. Because these now-omitted allegations harmed Plaintiff's claim, the Court may consider them in deciding the present motion. *See, e.g., Cole*, 2010 WL 532428, at *4. Even without this background, however, Plaintiff's alleged comparator set is too small and lacking in details to support an inference of racial discrimination, as set forth herein.

DEFS' MOT. TO DISMISS SECOND AM. COMPL.
NO. 3:26-CV-5939-RFL

*See* SAC ¶¶ 59–63 (identifying five white Facebook users whose accounts were allegedly restored following appeal); *see also Gray*, 2017 WL 1709327, at *3 (holding that allegations that "a white customer" successfully completed the same transaction Plaintiff attempted "during the same time" did not suffice to support a § 1981 claim); *Davis v. Valon Mortg. Inc.*, No. CV-22-01510, 2023 WL 4661789, at *2–3 (D. Ariz. July 20, 2023) (holding plaintiff failed to sufficiently plead race discrimination where he was allegedly required to interview for a lateral position and a white woman was not).

Moreover, Plaintiff fails to allege any details about the alleged identified comparators which would allow "the court [to] reasonably infer that racial animus accounts for the difference in treatment." *Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1163 (W.D. Wash. 2016) (citation modified). Here, Plaintiff does not allege any details about the content posted on his Facebook account, nor does he include any allegations demonstrating that the alleged comparators are similarly situated to him in any respect. Indeed, the SAC does not even allege that the "account-level notices" received by the five alleged comparator accounts concerned the same subject matter as Plaintiff's "Notice," because the SAC fails to allege the content of any of the alleged notices. *Compare* SAC ¶ 58 (alleging that "Meta has returned white Facebook account-holders to third-party contracting capacity following account-level notices arising from identified factual predicates") *with* FAC ¶ 69 (alleging that the same identified five comparator accounts "was enforced within Meta's sexual content and [CSE] enforcement family"). And, if the Court considers the FAC's more detailed allegations regarding the alleged comparators, those allegations suggest that the purported comparators are *not*, in fact, similarly situated.[9]

Because Plaintiff has failed to plead *any facts* supporting a plausible inference that any Defendant intentionally discriminated against him, his § 1981 claims must be dismissed. *See Ray v. Am. Airlines, Inc*, 755 F. Supp. 3d 1277, 1281 (C.D. Cal. 2024) (dismissing claims because "[t]he mere intersection of plaintiff's race and his alleged mistreatment by a defendant … is not enough to nudge plaintiff's claim of racial discrimination across the line from conceivable to plausible"

---

[9] *See, e.g.*, FAC ¶¶ 69–70 (alleging that comparator account named "Steven Ertelt" is an "Organization/Business account" that was "flagged under the CSE policy for a medical C-section video"); *id.* ¶ 69 (table) (identifying alleged comparator "COMP-1" as an individual account, while identifying Plaintiff's account as a "Business Owner" page).

DEFS' MOT. TO DISMISS SECOND AM. COMPL.
NO. 3:26-CV-5939-RFL

(citation modified)); *Gueye v. Wells Fargo Bank*, No. 3:22-cv-08904, 2024 WL 1024740, at *3–4 (N.D. Cal. Mar. 7, 2024) (dismissing pro se plaintiff's Section 1981 claim for lack of but-for causation because his allegation that defendants "star[ed] down at him" did not support his conclusion that he had "been subjected to racial profiling, racial slurs, derogatory comments, suspicion, unequal treatment and humiliation").

### D.      Plaintiff's Allegations Improperly Group the Vendor Defendants Together

Finally, the SAC fails as to each of the Vendor Defendants because it improperly asserts claims against the Vendor Defendants collectively, without specifying which of the Vendor Defendants were responsible for the specific acts alleged in the SAC. *See TEEC Angel Mgmt, LLC v. Tsingyuan Ventures LLC,* No. 24-cv-08991, 2026 WL 1660035, at *1–2 (N.D. Cal. Feb. 27 2026) (dismissing complaint based on finding that "Plaintiffs engage[d] in improper group pleading" where plaintiff referred to defendants "collectively without attributing conduct to any particular Defendant" or otherwise "distinguishing what each entity did"); *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 816 (N.D. Cal. 2022) (holding that "the Complaint improperly engages in undifferentiated pleading that fails to make clear what allegations are being made against" each defendant where "[a]lmost all of the allegations in the Complaint are made against" one entity, defined to include all the defendants). Here, although the SAC asserts the Section 1981 claim against all the Vendor Defendants, it fails to clearly specify which Vendor Defendant that Plaintiff alleges reviewed his Facebook account, or whether Plaintiff is merely guessing that one of the Vendor Defendants reviewed the Facebook account. *See* SAC ¶¶ 84, 86 (alleging that a "Codefendant," defined to include Accenture, Genpact and TaskUs, "decided Plaintiff's appeal" and "but for Plaintiff's race, the Codefendant would not have decided Plaintiff's appeal adversely"); *see also Beatport LLC v. SoundCloud, Ltd.*, No. CV 19-847, 2020 WL 3977602, at *5 (C.D. Cal. July 13, 2020) ("It is a basic pleading defect for a complaint to 'lump' parties together and to fail to distinguish between named defendants." (citation omitted)). Accordingly, Plaintiff's Section 1981 claim against the Vendor Defendants is independently subject to dismissal for failure to allege specific conduct as to each Vendor Defendant.

DEFS' MOT. TO DISMISS SECOND AM. COMPL.
NO. 3:26-CV-5939-RFL

### E.    Plaintiff Should Not Be Granted Leave to Amend

Leave to amend is inappropriate where amendment would be futile. *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1144 (9th Cir. 2015). Plaintiff has already amended his Complaint twice in the instant action, and has filed more than ten complaints overall against some combination of the Defendants in various actions arising out of the parties' dispute. *See* Dkt No. 148 at 5. Despite all of Plaintiff's attempts, none of his complaints has successfully stated any claim against any defendant, as demonstrated by Defendants' prior motions to dismiss. Thus, any additional attempt will be futile, including because Plaintiff is challenging the alleged decision to disable his Facebook account and so his claims will be barred by Section 230(c)(1) no matter what additional facts he pleads. *See, e.g.*, *Reaud v. Facebook, Inc.*, No. 23-cv-06329, 2024 WL 4126066, at *5 (N.D. Cal. Sept. 9, 2024) (denying leave to amend where plaintiff could not "allege additional plausible facts to escape Section 230").

### V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the SAC with prejudice.

Dated:  August 13, 2026

By: */s/ Michelle L. Visser*

Michelle L. Visser
Sarah N. Davis
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
mvisser@orrick.com
sdavis@orrick.com
Telephone: (415) 773-5518

*Attorneys for Defendants*
*Meta Platforms, Inc. and Genpact Limited*

/s/ *Devin S. Anderson*

Devin S. Anderson (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: (801) 877-8115
Facsimile: (801) 877-8101
devin.anderson@kirkland.com

Christopher W. Keegan, P.C. (SBN 232045)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1882
Facsimile: (415) 439-1500
chris.keegan@kirkland.com

*Attorneys for Defendant Accenture LLP*

/s/  *Kristin C. Christensen*

Kristin C. Christensen, SBN 286711
kristin.christensen@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Telephone:      415-442-4810
Facsimile:      415-442-4870

Brittney L Turner, SBN 319818
brittney.turner@ogletree.com
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C**.
19191 S. Vermont Avenue, Suite 635
Torrance, CA  90502
Telephone:      310-217-8191
Facsimile:      310-217-8184

*Attorneys for Defendants TASKUS, INC.*

DEFS' MOT. TO DISMISS SECOND AM. COMPL.
No. 3:26-CV-5939-RFL