MICHELLE VISSER (SBN 277509)
mvisser@orrick.com
SARAH N. DAVIS (SBN 275145)
sdavis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

*Attorneys for Defendants*
*Meta Platforms, Inc.and Genpact Limited*

Devin S. Anderson (admitted pro hac vice)
devin.anderson@kirkland.com
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: (801) 877-8115
Facsimile: (801) 877-8101

*Attorney for Defendant Accenture LLP*

(Additional counsel listed on next page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARVELLE J. "JAY" BALLENTINE,

Plaintiff,

v.

META PLATFORMS, INC., ACCENTURE LLP, GENPACT LIMITED, AND TASKUS, INC.

Defendants.

Case No. 3:26-cv-05939-RFL

**DEFENDANTS META PLATFORMS, INC., ACCENTURE LLP, GENPACT LIMITED, AND TASKUS, INC.'S CONSOLIDATED REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Judge: Hon. Rita F. Lin
Dept: Courtroom 4 – 17th Floor
San Francisco

Christopher W. Keegan (SBN 232045)
chris.keegan@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1882
Facsimile: (415) 439-1500

*Attorney for Defendant Accenture LLP*

Brittney L Turner (SBN 319818)
brittney.turner@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
19191 S. Vermont Avenue, Suite 635
Torrance, CA 90502
Telephone: (310) 217-8191
Facsimile: (310) 217-8184

Kristin C. Christensen (SBN 286711)
kristin.christensen@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: (415) 442-4810
Facsimile: (415) 442-4870

*Attorneys for Defendants TASKUS, INC.*

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiff's Claim Is Barred By Section 230 .......... 2

1. The Content at Issue Was Provided by Plaintiff, Not Defendants .......... 2

2. Plaintiff's Claim Seeks to Treat Defendants as Content Publishers .......... 3

B. The Court May Consider Allegations in Plaintiff's First Amended Complaint Which Plaintiff Omitted From the SAC .......... 5

C. Plaintiff's Section 1981 Claim Fails Because the SAC Fails to Allege Intentional Discrimination .......... 6

D. The Allegations in the SAC Improperly Group the Vendor Defendants Together. 7

III. CONCLUSION .......... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ..... 5

*Beluca Ventures, LLC v. Aktiebolag*,
622 F. Supp. 3d 806 (N.D. Cal. 2022) ..... 8

*California v. Meta Platforms, Inc.*,
186 F.4th 663 (9th Cir. 2026) ..... 4

*Cammas v. YMCA of East Bay*,
No. 25-cv-10295-RFL, 2026 WL 2197863 (N.D. Cal. July 30, 2026) ..... 7

*Castronuova v. Meta Platforms, Inc.*,
No. 4:24-cv-02523-YGR, 2025 WL 1914860 (N.D. Cal. June 10, 2025) ..... 4

*Colombo v. Palo Alto Unified Sch. Dist.*,
No. 24-cv-00909-NC, 2025 WL 929955 (N.D. Cal. Mar. 27, 2025) ..... 6

*Jackson v. Loews Hotels, Inc.*,
No. ED CV 18-827-DMG, 2019 WL 6721637 (C.D. Cal. July 24, 2019) ..... 6

*Jimenez v. DTRS St. Francis, LLC*,
No: C 12–06411 SBA, 2013 WL 5979510 (N.D. Cal. Nov. 8, 2013) ..... 7

*Johnson v. Riverside Healthcare System, LP*,
534 F.3d 1116, 1123 (9th Cir. 2008) ..... 7

*Kimzey v. Yelp!, Inc.*,
836 F.3d 1263, 1265 (9th Cir. 2016) ..... 3

*King v. Facebook, Inc.*,
No. 19-cv-01987-WHO, 2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) ..... 4

*Ligon v. Meta Platforms, Inc.*,
No. 25-cv-03959-RMI, 2026 WL 1146091 (N.D. Cal. Apr. 28, 2026) ..... 4

*Murphy v. Twitter, Inc.*,
60 Cal. App. 5th 12 (2021) ..... 5

*PAE Gov't Svcs., Inc. v. MPRI, Inc.*,
514 F.3d 856 (9th Cir. 2007) ..... 6

*Reyes v. Wells Fargo Bank*,
No. EDCV 17-909-JFW(KKx), 2017 WL 11568871 (C.D. Cal. Aug. 17, 2017) ..... 2

*Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*,
144 F. Supp. 3d 1088 (N.D. Cal. 2015) .......... 3, 5

**Statutes**

42 U.S.C. § 1981 .......... *passim*

47 U.S.C. § 230 .......... *passim*

## I. INTRODUCTION

Plaintiff's Opposition ("Opposition" or "Opp") confirms his claim must be dismissed. As Defendants explained in their consolidated Motion to Dismiss ("Motion" or "Mot."), Plaintiff's Second Amended Complaint ("SAC") fails for at least three reasons: (1) the SAC is barred in its entirety by 47 U.S.C. § 230(c)(1) ("Section 230") because it seeks to hold Defendants—who are interactive computer service providers and/or users—liable for their decision to disable Plaintiff's Facebook account; (2) the SAC fails to allege sufficient facts to state a claim under 42 U.S.C. § 1981 ("Section 1981") because it fails to plead any facts that show any Defendant engaged in intentional race discrimination; and (3) the SAC engages in improper group pleading as to Accenture, TaskUs, and Genpact (collectively, the "Vendor Defendants"). Plaintiff's Opposition fails to refute any of those defenses, and the Court should dismiss the SAC with prejudice.

*First*, Plaintiff does not and cannot dispute that Section 230 bars claims against interactive computer service providers and users based on decisions to remove third-party content, including user accounts from their services. Instead, Plaintiff contends that his Section 1981 claim—the crux of which is that Defendants disabled his Facebook account—is somehow not a challenge based on Defendants' removal of content. But as shown in Defendants' Motion, courts have repeatedly rejected similar arguments and attempts to creatively plead around Section 230, including based on claims brought under Section 1981 and other anti-discrimination statutes. Plaintiff does not—and cannot—point to any legal authority supporting his argument that he can evade Section 230 simply by amending his pleading to omit all references to the disablement of his account.

*Second,* Plaintiff concedes that, to state a claim under Section 1981, he must plead *facts* that create a *plausible* inference of intentional race discrimination. And his Opposition fails to refute that he has not alleged any such facts here. Instead, Plaintiff merely repeats his allegation that Defendants were aware of his race when they disabled his Facebook account and then points to the existence of five (out of millions) alleged white comparators whose Facebook accounts were allegedly restored after being disabled under the same policy. But, as established in Defendants' Motion, courts routinely dismiss such conclusory allegations as insufficient to state a claim. Plaintiff does not distinguish a single case cited in Defendants' Motion or identify any case that has

held that such rank conjecture is sufficient to create a plausible inference of intentional race discrimination. This too thus warrants dismissal.

*Finally,* the Opposition confirms that the SAC engages in improper group pleading as to the Vendor Defendants. The Opposition acknowledges that the SAC pleads only that one of the three Vendor Defendants committed the actions giving rise to Plaintiff's claim, without including any allegations as to specific conduct taken by each defendant.

Despite multiple attempts to replead his claims, Plaintiff still has not stated a valid claim to relief. The SAC should be dismissed with prejudice.

## II. ARGUMENT

### A. <u>Plaintiff's Claim Is Barred By Section 230</u>

Under Section 230, a claim should be dismissed where, like here, (1) the defendants are a "provider or user of an interactive computer service[;]" (2) the content at issue was "provided by another information content provider[;]" and (3) the plaintiff's claims treat the defendants as the "publisher or speaker" of that content. Mot. at 7 (quoting 47 U.S.C. § 230(c)(1)). Plaintiff's Opposition challenges only the second two prongs. Neither challenge has merit.[1]

#### 1. The Content at Issue Was Provided by Plaintiff, Not Defendants

Plaintiff's argument that his claim is based on "a Notice authored by Meta" (Opp. at 7) and not the removal of his Facebook account[2] cannot be squared with the allegations in the SAC—particularly when that claim is construed in light of Plaintiff's allegations in his First Amended Complaint ("FAC"). The FAC makes clear that the notice Plaintiff received was a notice that his account had been disabled. FAC ¶¶ 54–57. And the Court can properly consider those allegations in ruling on Defendants' Motion. *See* Mot. at 10-12, *infra* at 6–7. Despite Plaintiff's attempts to evade Section 230, moreover, the SAC itself confirms that the crux of Plaintiff's dispute is that

---

[1] The Opposition offers no arguments disputing that Meta is an "interactive computer service provider," or that each Vendor Defendant is either a user or provider of an "interactive computer service" as defined by Section 230 and thus concedes the point. *See* Mot. at 7-8; Opp. at 7; *see also* *Reyes v. Wells Fargo Bank*, No. EDCV 17-909-JFW(KKx), 2017 WL 11568871, at *4 (C.D. Cal. Aug. 17, 2017) (recognizing that where a plaintiff "failed to respond" to a defendant's argument, the plaintiff "conceded" the argument).

[2] Notably, Plaintiff does not (and could not) dispute that his Facebook account is "information provided by another information content provider," i.e., himself. *See* Mot. at 8–9.

Meta disabled his account. For example, paragraphs 79 and 80 explain that "Plaintiff sourced one hundred percent of his customers and leads through Facebook," and that Defendants' conduct "deprived Plaintiff" of those contacts. SAC ¶¶ 79–80. And paragraphs 82–88 repeatedly make clear that the alleged conduct that purportedly deprives Plaintiff of his ability to enter into contracts is Defendants' alleged refusal to restore his Facebook account. *See, e.g.,* SAC ¶ 82 ("Plaintiff was not returned to *account access*…") (emphasis added), ¶ 84 ("The Codefendant knew that its appeal decision controlled whether the *account-holder* would regain *access to the account* functions reflected in the appeal interface." (emphasis added)).

Courts have uniformly held that challenges to decisions to disable or terminate social media accounts are challenges to content provided by an "information content provider" other than the social media provider or the vendors—namely, the users themselves. *See* Mot at 8–9; *see also Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015) (finding that the alleged content of Plaintiff's Facebook page was information provided by another information content provider because the page "was created entirely by [p]laintiff"). Moreover, the Ninth Circuit has rejected similar attempts to use creative language in an attempt to attribute other content providers' speech to the interactive computer service provider. In *Kimzey v. Yelp!, Inc.*, for example, the plaintiff used "cryptic[]" allegations in an attempt to attribute user-generated content to Yelp itself, instead of Yelp users. 836 F.3d 1263, 1265 (9th Cir. 2016). The Ninth Circuit "decline[d] to open the door to such artful skirting of the CDA's safe harbor provision" and instead affirmed the dismissal of plaintiff's claims. *Id.* at 1266. There is no reason to depart from *Kimzey*, and the Court should likewise reject Plaintiff's "effort to circumvent the CDA's protections through 'creative' pleading[.]" *Id.*

### 2. Plaintiff's Claim Seeks to Treat Defendants as Content Publishers

Plaintiff cannot avoid Section 230's immunity just because he has asserted a claim under Section 1981, as his Opposition suggests. Opp. at 6. As established in Defendants' Motion, "[w]hat matters" for Section 230 "is not the 'name of the cause of action,' but 'whether the duty that the Plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" Mot. at 9 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th

Cir. 2009)).[3] Here, because Plaintiff's claim arises from the alleged disablement of his Facebook account (allegedly for racially discriminatory reasons), the claim arises from Defendants' status as a publisher of content provided by Plaintiff. In other words, because the alleged unlawful conduct is that Defendants disabled Plaintiff's Facebook account (and removed the associated content from Meta's service), the alleged violated duty necessarily derives from Defendants' status as a publisher of Plaintiff's Facebook account, no matter the asserted reason why the removal is unlawful. *See Castronuova v. Meta Platforms, Inc.*, No. 4:24-cv-02523-YGR, 2025 WL 1914860, at *4 (N.D. Cal. June 10, 2025) (holding that the "allegation that [defendants'] decisions" to suspend her accounts "resulted from a larger conspiracy . . . does not change the nature of the underlying conduct as protected publisher activity").

Plaintiff cannot escape this conclusion simply by casting his "theory of lability" as "racial discrimination in contracting, not publishing[.]" Opp. at 6. Nor does the fact that Plaintiff's claims arise under a civil rights statute protecting against racial discrimination defeat Section 230 immunity. To the contrary, courts have routinely dismissed claims under Section 230 based on Meta's decision to suspend a Facebook account, even where the plaintiff alleges that the decision resulted from discrimination that allegedly violated the very same statute Plaintiff invokes here. *See Ligon v. Meta Platforms, Inc.*, No. 25-cv-03959-RMI, 2026 WL 1146091, at *8 (N.D. Cal. Apr. 28, 2026) (dismissing Section 1981 claim "alleging that [Meta] discriminated against him in the making and enforcement of contracts" because "this claim is based solely on [Meta's] suspension and removal of Plaintiff's content and profiles, which is essential publishing activity routinely protected by Section 230(c)(1)"); *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 4221768, at *4–5 (N.D. Cal. Sept. 5, 2019) (finding that Section 230 barred Section 1981 claim based on suspension of plaintiff's Facebook account, and noting that the decision of "which

[3] To the extent that the Opposition suggests that the Ninth Circuit's recent opinion in *State of Colorado* changed the Section 230 framework (Opp. at 6), that suggestion is baseless. To the contrary, that case focused on the narrow issue of whether interlocutory appeal was appropriate under the circumstances, and the Ninth Circuit reiterated the well-established test for determining whether Section 230 bars a claim, noting that "[c]ourts must examine each claim to determine whether a plaintiff's *theory of liability* would treat a defendant as a publisher or speaker of third-party content." *See California v. Meta Platforms, Inc.*, 186 F. 4th 663, 674 (9th Cir. 2026) (internal quotations omitted).

accounts to suspend or not" is publisher conduct); *see also Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) (finding Title II of the Civil Rights Act of 1964 discrimination claim based on disabling Facebook page was barred by Section 230 because "removing content is something publishers do").[4] Accordingly, all three requirements of Section 230 are met, and the SAC should be dismissed with prejudice as barred by Section 230.

### B. The Court May Consider Allegations in Plaintiff's First Amended Complaint Which Plaintiff Omitted From the SAC

Plaintiff's attempt to avoid Section 230 by arguing that the Court cannot consider the allegations in his FAC fails. As set forth in Defendants' Motion, it is well-established that courts can and should consider prior pleadings where, like here, the plaintiff has amended to omit allegations that are fatal to his complaint. *See* Mot. at 10–11. Nothing in Plaintiff's Opposition contradicts this black-letter principle of law.

To start, Plaintiff does not even attempt to distinguish the multitude of cases cited in Defendants' Motion holding that courts may consider allegations in a superseded complaint as part of the "context-specific inquiry" on a motion to dismiss. *See* Mot. at 10–12 (citing cases). Instead, the Opposition asserts only that *PAE Gov't Svcs., Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007) bars consideration of allegations in a superseded complaint. Opp. at 5. Not so.

Rather, *PAE* is inapposite. In *PAE*, the Ninth Circuit held that it was improper to strike new allegations in amended pleadings that arguably contradicted the plaintiff's original complaint. 514

[4] Nor can the Opposition's suggestion that his claim does not "require monitoring" of content on Meta's service save Plaintiff's claim from Section 230 immunity. *See* Opp. at 6. While Section 230 necessarily bars claims that would require interactive computer service providers to monitor third-party content posted on its services, Section 230's protections extend to any claims that would hold an internet service provider liable for its exercise of traditional editorial functions, including the removal of content, and not just claims that would require ongoing monitoring. *See, e.g., Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009) ("[R]emoving content is something publishers do" and "because such conduct is *publishing conduct. . .* section 230 protects from liability 'any activity that can be boiled down to decide whether to exclude material that third parties seek to post online'"); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 26 (2021) ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred" by Section 230). Thus, it is immaterial to the Section 230 inquiry whether Plaintiff's claim involves Meta's alleged wrongful removal of content posted to its service, rather than any alleged failure by Meta to monitor content on its service.

F.3d at 860. Among other things, the Ninth Circuit reasoned that subsequent factual development may warrant such an alleged amendment and noted that it was not clear that the allegedly contradictory allegations were, in fact, contradictory. *Id.* at 858–59. In contrast, Plaintiff did not amend his complaint based on subsequent factual development or assert new facts at all. Instead, Plaintiff amended his complaint to omit details and to obfuscate that he is challenging Defendants' disablement of his Facebook account to try to avoid dismissal under Section 230. Defendants are not asking this Court to strike any allegations in the SAC; only to construe them against the backdrop of the FAC.[5] Accordingly, nothing in *PAE* undermines any of the authority in Defendants' Motion, all of which were decided post-*PAE*. *See* Mot. at 10–12; *see also Jackson v. Loews Hotels, Inc.*, No. ED CV 18-827-DMG (JCx), 2019 WL 6721637, at *3 (C.D. Cal. July 24, 2019) (distinguishing *PAE* and finding that courts may consider "previously-pled material information" when the allegations in the operative complaint "do not *contradict*" the allegations in the previous complaint, but rather "merely *omit*[]" the previously pled allegations); *Colombo v. Palo Alto Unified Sch. Dist.*, No. 24-cv-00909-NC, 2025 WL 929955, at *10 (N.D. Cal. Mar. 27, 2025) (considering allegations in prior complaint where plaintiff "replace[d] his previous allegations . . . with only conclusory allegations").

Accordingly, the Court may consider material allegations from Plaintiff's FAC in resolving Defendants' Motion to Dismiss.

### C. <u>Plaintiff's Section 1981 Claim Fails Because the SAC Fails to Allege Intentional Discrimination</u>

The SAC fails to state a claim under Section 1981 because it does not allege any facts that create a plausible inference of intentional discrimination based on the disablement of Plaintiff's account. *See* Mot. at 12–15. In his Opposition, Plaintiff merely reiterates the SAC's conclusory allegations of intentional discrimination without addressing any of the authorities cited in the Motion showing that such allegations do suffice to make his discrimination allegations plausible. *See* Mot. at 13–14 (citing cases); *see also* Opp. at 8.

---

[5] As set forth in Defendants' Motion, if the FAC is *not* considered when construing the SAC, the SAC is incomplete and incoherent. Mot. at 11. Indeed, if it were not for Plaintiff's prior pleadings, Defendants would not even be on notice of the nature of the claims against them.

The only authority that Plaintiff does cite, moreover, underscores that Plaintiff has not met his pleading burden here. In *Johnson v. Riverside Healthcare System, LP*, the Ninth Circuit found that a Section 1981 claim contained sufficient allegations to survive a motion to dismiss where the complaint alleged, among other things, that the plaintiff's co-worker "uttered a racial epithet and moved as if to strike" the plaintiff. 534 F.3d 1116, 1123 (9th Cir. 2008). While such allegations sufficed to nudge the plaintiff's allegations of racial discrimination from conceivable to plausible in that case, Plaintiff alleges nothing of the sort here. Indeed, the SAC does not allege the use of any racial epithet nor any other conduct by any Defendant that suggests *any* racial animus directed toward Plaintiff.

Plaintiff insists that the Court should infer such racial animus from his conclusory allegations of an adverse decision where a Vendor Defendant allegedly had access to his photos and a handful of purported comparators. But that is not the law. In deciding whether to dismiss a Section 1981 claim, "a court need not accept as true allegations that are merely conclusory . . . or unreasonable inferences." *Cammas v. YMCA of East Bay*, No. 25-cv-10295-RFL, 2026 WL 2197863, at *2 (N.D. Cal. July 30, 2026) (internal quotations omitted). And the Opposition offers no explanation of how the facts alleged in the SAC give rise to any plausible inference of racial animus. Nothing in the SAC identifies how Defendants' mere purported awareness of Plaintiff's race, coupled with the existence of five vaguely identified alleged comparators (with no facts alleged to show how they are purportedly similarly situated), can possibly give rise to an inference that Defendants acted with racial animus. *See, e.g., Jimenez v. DTRS St. Francis, LLC*, No: C 12–06411 SBA, 2013 WL 5979510, at *4 (N.D. Cal. Nov. 8, 2013) (dismissing Section 1981 claim where the complaint "is devoid of factual content demonstrating that [defendants'] conduct was racially motivated," noting that "merely being identifiable as a minority" in insufficient "to establish purposeful discrimination on the basis of race to survive a motion to dismiss").

The SAC thus fails to state a claim under Section 1981.

### D. <u>The Allegations in the SAC Improperly Group the Vendor Defendants Together</u>

The SAC fails as to each of the Vendor Defendants because it improperly asserts claims against them collectively, without specifying which of the Vendor Defendants were responsible for

the specific acts alleged. *See* Mot. at 15. The Opposition confirms this conclusion, noting that while the SAC alleges that each Vendor Defendant contracted with Meta separately, Plaintiff's claim relies on allegations that "one member of [the] defined three-entity set decided Plaintiff's appeal" without identifying which Vendor Defendant did so because the "actor's identity is" not within Plaintiff's possession. Opp. at 9. The Opposition makes no attempt to distinguish the authority cited in the Motion recognizing that such undifferentiated allegations are improper group pleading, warranting dismissal. *See* Mot. at 15; *see also Beluca Ventures, LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 816 (N.D. Cal. 2022) (holding that the complaint "improperly engages in undifferentiated pleading" where the complaint alleges claims against a single entity, defined to include all defendants).

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the SAC with prejudice.

Dated: September 17, 2026

By: /s/ Michelle Visser

Michelle L. Visser
Sarah N. Davis
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
mvisser@orrick.com
sdavis@orrick.com

*Attorneys for Defendants*
*Meta Platforms, Inc. and Genpact Limited*

/s/ Devin S. Anderson
Devin S. Anderson (*admitted pro hac vice*)
KIRKLAND & ELLIS LLP
95 South State Street
Salt Lake City, UT 84111
Telephone: (801) 877-8115
Facsimile: (801) 877-8101
devin.anderson@kirkland.com

Christopher W. Keegan, P.C. (SBN 232045)
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Telephone: (415) 439-1882
Facsimile: (415) 439-1500
chris.keegan@kirkland.com

*Attorneys for Defendant Accenture LLP*

/s/ *Kristin C. Christensen*
Kristin C. Christensen, SBN 286711
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: (415) 442-4810
Facsimile: (415) 442-4870
kristin.christensen@ogletree.com

Brittney L Turner, SBN 319818
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
19191 S. Vermont Avenue, Suite 635
Torrance, CA 90502
Telephone: (310) 217-8191
Facsimile: (310) 217-8184
brittney.turner@ogletree.com

*Attorneys for Defendants TASKUS, INC.*